C.A. LA SEGURIDAD, as Subrogee,
Plaintiff-Appellant,

v.

TRANSYTUR LINE, In Personam and
M/V Nela Altomare, Her Engines, Boil-
ers, etc., In Rem, Defendant-Appellee.

No. 81–5949.

United States Court of Appeals,
Eleventh Circuit.

June 24, 1983.

Armstrong & Mejer, Alvaro L. Mejer, Coral Gables, Fla., for plaintiff-appellant.

Richard F. Ralph, Miami, Fla., for defendant-appellee.

Before TJOFLAT, KRAVITCH and HATCHETT, Circuit Judges.

TJOFLAT, Circuit Judge:

In this case we consider whether the district court abused its discretion in conditionally dismissing on *forum non conveniens* grounds La Seguridad's suit in admiralty against Transytur, a Venezuelan ocean-carrier.[1] The suit involves the loss of goods described in three bills of lading issued by the defendant's port agent, Transytur Line of Florida, Inc., in Miami, Florida. Appellant La Seguridad is a Venezuelan insurance company which has compensated its insureds, the consignees of the goods, and has become subrogated to their rights. Our review of the record indicates that the issues dispositive of La Seguridad's claim have not as yet been developed, making impossible any determination of the relative convenience of the respective forums. We therefore vacate the order of dismissal, and remand so that the district court may conduct such further proceedings as are necessary to make a determination.

I.

La Seguridad's complaint set forth two theories of recovery against Transytur: that Transytur breached its contracts of carriage[2] by failing to deliver merchandise in the same good order and condition as received, and that it similarly failed to fulfill its duties and responsibilities as bailee for hire. The complaint does not, however, indicate precisely what conduct constituted the alleged breach, nor where that conduct occurred, matters highly relevant to the *forum non conveniens* issues presented in this appeal. The defendant Transytur, without filing an answer, moved to dismiss on *forum non conveniens* grounds, supporting that motion with an affidavit from its Miami port agent.

Neither that motion nor the supporting affidavit helped to delineate the issues in the case. The motion simply stated that the crew of the vessel in question was Venezuelan, and that there was no issue that the goods in question had been loaded and carried and witnesses having knowledge of facts relating to these claims reside or are found in Venezuela. The port agent's affidavit, without averring personal knowledge, reiterated that the goods were received, loaded, and carried from Miami and that, to the best of his knowledge, the witnesses and documents material to the case were in Venezuela. Transytur offered no theory of defense to the action, and hence no basis for its conclusion that the evidence that existed

---

1. The court properly conditioned its dismissal on Transytur's presentation of a sworn affidavit consenting to personal jurisdiction in an appropriate Venezuelan court and waiving any applicable statute of limitations defense, providing La Seguridad filed suit in Venezuela within six months of its order.

We note that La Seguridad also sued the Venezuelan vessel involved, *M/V Nela Alto-*

*mare*, but never effected service of process on it. It has never appeared in this action, and is not a party to this appeal.

2. Transytur contracted with two different United States shippers to carry the goods described in the three bills of lading, and although the complaint does not so specify, we assume that these contracts were for the benefit of the Venezuelan consignees.

in Venezuela was relevant to the case.[3] La Seguridad, in its responses to the motion, did not offer any explanation as to how the goods were lost, or why it was entitled to recover for that loss; it simply denied that the loss occurred on Venezuelan territory and stressed the contacts that the transaction had with the United States.[4]

La Seguridad's first indication of the facts it thought relevant to its claim emerged in its motion for partial summary judgment on the issue of liability, filed during the pendency of the *forum non conveniens* motion. The summary judgment motion argued that a showing that the carrier received the cargo in good condition and failed to deliver the cargo in like condition would establish a prima facie case as to the carrier's liability. La Seguridad claimed that documents already in its possession established both elements of this prima facie case, and hence that it was entitled to judgment as a matter of law.[5] Transytur, rather than addressing the motion on its merits, moved for additional time to respond to the motion *after* the court's disposition of its *forum non conveniens* motion. Thus, the district court still had nothing before it with which to decide the *forum non conveniens* motion but assertions as to the degree of contacts the transaction had with the United States and Venezuela, and conclusory allegations as to where relevant evidence might be located.

Despite this undeveloped record, the court entered an initial order of dismissal, stating "[t]he record discloses that all parties to this litigation and the witnesses having knowledge of the incidents surrounding the loss of goods shipped from Mexico to Venezuela are Venezuelan corporations and citizens with their principal places of business and homes in the Republic of Venezuela." Record, vol. 1 at 56. The court further stated that the claims and issues had no relation to the United States except that the goods left from Miami and the defendant had a port agent there.

Having erred in stating that the goods which formed the basis of the litigation were shipped from Mexico to Venezuela, the court granted a hearing on La Seguridad's motion for relief from the court's order of dismissal. The hearing still failed to clarify the issues in dispute. Transytur claimed that it received the cargo in good condition, loaded it on the ship in good condition, and whatever happened to it, happened in Venezuela. It stated "[t]here are no factual issues in this case that arise in the United States." Record, vol. 2, at 12. La Seguridad countered by rejecting Transytur's "admission" that the goods were loaded aboard the ship as a "self-serving statement" by counsel. It stated, "there are no documents showing those goods were loaded aboard that ship[,]" thus holding out the possibility that the critical events occurred in Miami, not Venezuela. *Id.* at 14. To Transytur's subsequent claim that the whole case will turn factually on whether there was constructive delivery to the consignees in Venezuela, suggesting that the cargo disappeared in Venezuelan customs, La Seguridad's counsel stated, correctly enough given the state of the record, "there are no facts to support that." *Id.* at 24.

The court did not attempt to go beyond these representations of counsel to ascertain the underlying facts of the case. It did not

---

3. Transytur also stated that the Institute of Ports and Harbors of the Republic of Venezuela was subject to suit there, but never explained why this entity might be liable or how this might be relevant to its motion to dismiss.

4. We note that La Seguridad's request for admissions has remained pending throughout the conduct of the litigation.

5. We note that *if* La Seguridad's view of the law was correct, and *if* its claim that documents in its possession constituted Transytur's admissions on both elements of the prima facie case, then the alleged inconvenience of the Florida forum would evaporate, at least without some additional showing by Transytur. La Seguridad's claim would seem to hinge on the meaning of the phrase "faltante en descarga" (missing on discharge) in documents allegedly certified by Transytur's Venezuelan port agent. *Request for Admissions,* Exhibits B, E and H. Transytur never replied to this request, see note 4, *supra,* and the court never determined the factual implications of this admission, if indeed it was made.

attempt to pin counsel down to their theories of the case, and the facts that would support their theories. Instead, noting the Venezuelan nationality of all the parties, it declined to try the case where all of the issues, "as they now stand admitted by the defendant," occurred in Venezuela and the only contacts with the United States were that the contract was entered into in Miami and the goods shipped from there.[6] *Id.* at 27. The court's order reaffirming its original order of dismissal states—without any support in the record other than Transytur's so-called "admission" that it received the goods for shipment in good condition and that the goods were actually shipped on the defendant's line to Venezuela—that the issue will revolve around what happened to the goods at the time they were received in Venezuela. Record, vol. 1, at 68.

## II.

■ Under the doctrine of *forum non conveniens,* a district court has inherent power to decline to exercise jurisdiction over a case when an adequate, alternative forum is available. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The court must "weigh relative advantages and obstacles to fair trial" in each forum, considering factors of private and public interest. *Id.* at 508, 67 S.Ct. at 843. The analytic method the district court should employ has been well-summarized as follows:

> As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum. If he decides that the

balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

*Pain v. United Technologies Corp.,* 637 F.2d 775, 784–85 (D.C.Cir.1980) (emphasis in original), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981). A plaintiff who chooses a foreign forum substantially undercuts the presumption his choice is reasonable: "[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 256, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981) (footnote omitted).

Since the touchstone of *forum non conveniens* analysis is convenience, controlling weight cannot be given to any one factor in the balancing process or the doctrine would lose much of the flexibility that is its essence. *Piper Aircraft,* 454 U.S. at 249, 102 S.Ct. at 262. The Supreme Court has indicated that, in considering the private interests of the litigants, some important considerations are: relative ease of access to sources of proof; ability to obtain witnesses; possibility of view of premises, if relevant; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. The Court also listed certain public interest factors bearing upon the forum's interest in entertaining the lawsuit: court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant resolving conflict-of-laws problems and applying foreign law. *Id.* at 508–09, 67 S.Ct. at 843. It is evident that these lists were not intended to be exhaustive, but merely to suggest the range of relevant considerations.

■ The scope of our review is quite limited. A district court's *forum non con-*

---

6. Of course, the "admission" of Transytur's counsel at the hearing was nothing more than an assertion that the controlling facts in the dispute occurred at a place supporting his motion to dismiss on the ground of *forum non conveniens.*

veniens determination "may be reversed only where there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft,* 454 U.S. at 257, 102 S.Ct. at 266. It follows, of course, that the court abuses its discretion when it fails to balance the relevant factors. Thus, for example, where the court does not weigh the relative advantages of the respective forums but considers only the disadvantages of one, it has abused its discretion. *Founding Church of Scientology v. Verlag,* 536 F.2d 429, 436 (D.C.Cir.1976). On the fragmentary record before us, it is impossible to make a sound determination of relative convenience; we must therefore vacate the district court's order of dismissal and remand for further development of the facts and issues.

■■■ The district court's orders disclose three grounds for its dismissal of this lawsuit: (1) all the parties are Venezuelan; (2) the issues in the case will revolve around what happened to the goods at the time that they were received in Venezuela; and (3) the claims and issues here have no relation to the United States except that the goods were shipped from Miami. It seems clear, however, that the district court's central concern involved the second ground: that it would simply be unable to try the case in the absence of important witnesses beyond the court's jurisdiction. Record, vol.

2, at 18, 24. The fact that all the parties are Venezuelan, while relevant, is hardly in itself a critical factor in the *forum non conveniens* determination; the nationality of the parties is relevant only insofar as it relates to the convenience and fairness of the forum.[7] Nor can it be said that there are insubstantial contacts between this claim and the United States. The contracts of carriage were signed in the United States; those contracts were between two American shippers and the defendant, the Venezuelan plaintiff having taken the place of the American shippers in this litigation because its insureds, the Venezuelan consignees, bore the burden of the loss of the goods; the goods, presumably, were United States exports and certainly were shipped from a United States port; and the contracts stipulated that the U.S. Carriage of Goods by Sea Act, 46 U.S.C. § 1300–1315 (1976 & Supp. V 1981) would govern any action based on the contract.[8] Thus, the district court's belief that the dispositive factual issues would be developed exclusively by Venezuelan witnesses and documents is the central basis for its holding.

The difficulty this case presents is that we still do not know the underlying nature of La Seguridad's claim, nor of Transytur's defenses. Without delineating the elements of the claims and the defenses thereto, we simply cannot know the factual issues raised by these claims, and are left only to speculate as to what witnesses and documents might be relevant and where they might be located. Until the issues are

---

**7.** We have already noted, *supra* at 1307, that a plaintiff's choice of a foreign forum, such as this Venezuelan plaintiff's choice of the United States forum, weakens the presumption that its choice is convenient. We recognize also that "courts should require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion [as may exist] to deny a [United States] citizen access to the courts of this country." *Burt v. Isthmus Dev. Co.,* 218 F.2d 353, 357 (5th Cir.), *cert. denied,* 349 U.S. 922, 75 S.Ct. 661, 99 L.Ed. 1254 (1955). However, the fact that all the parties to a maritime suit are foreign is not in itself a powerful reason to hold the forum inconvenient. *Cf. The Belgenland,* 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152 (1885); *Motor Distrib., Ltd. v. Olaf Pedersen's Rederi A/S,*

239 F.2d 463 (5th Cir.) (jurisdiction should be retained over suits involving maritime collisions between foreign vessels in international waters where those suits arise under the common law of nations), *cert. denied,* 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760 (1957).

**8.** In any event, "a proper *Gilbert* analysis obligates the court to assess not only the number of contacts but also the comparative efficacy and efficiency of trying a case in one forum as opposed to another. Contacts are relevant to the *forum non conveniens* inquiry only insofar as they relate to the ease and fairness of trying a case in a particular jurisdiction." *Manu Int'l, S.A. v. Avon Prods., Inc.,* 641 F.2d 62, 65 (2d Cir.1981).

framed, there is simply no basis for a *forum non conveniens* determination other than sheer speculation.

The complaint alleges breach of contract and breach of the duties of a bailee for hire, but does not clarify the specific acts of Transytur which breached those obligations and caused the damages for which La Seguridad seeks recovery. Nowhere in this record do we learn what Transytur's defense is to these claims, nor what witnesses and documents would establish this defense. La Seguridad urges that the mere failure to deliver the goods to it in Venezuela establishes a prima facie case, and that these facts are already established. The district court never decided this summary judgment claim. If these facts are established, and *if* they suffice to constitute a conclusive showing of appellee's liability, no problems of proof in Venezuela would arise. Alternatively, if the loss occurred on the docks in Miami, Venezuelan documents and witnesses would also be irrelevant.

 Transytur did not offer a contrasting theory of the case until the court's hearing on appellant's motion to reconsider the original order of dismissal. At that time, counsel "admitted" that it received the goods in good condition and loaded them on the ship in good condition, asserting that "whatever happened, happened in Venezuela." Record, vol. 2, at 12. Counsel's representations do not constitute proof of this "admission," and the only evidence in the record supporting a portion of this assertion—three clean bills of lading signed by Transytur's Miami port agent—were contained in La Seguridad's request for admissions to which Transytur declined to respond until after the court's resolution of its *forum non conveniens* motion. Thus, there is no evidence in the record to support the court's statement that liability will turn on what happened to the goods at the time they were received in Venezuela. Since it is axiomatic that "the burden of making a showing sufficient to justify the district court's refusal to retain jurisdiction rests on

the moving party[,]" *Phillippine Packing Corp. v. Maritime Co.,* 519 F.2d 811, 812 (9th Cir.1975), it was incumbent on counsel to come forward with evidence in support of its assertions. Failing that, the district court abused its discretion in dismissing the lawsuit.

At oral argument, the failure of the parties, and the court below, to bring the case into a posture in which the *forum non conveniens* motion could be resolved became manifest. La Seguridad told this court that "the battleground" will be the Miami dock, and Transytur insisted that the battleground was either the high seas or the Venezuelan dock. Transytur also urged a theory of constructive delivery—without explaining how such a theory related to the facts of this case—while admitting at the same time it "was never quite sure" what La Seguridad's underlying claim was.

Differing theories of recovery and defense will make different facts relevant to liability; the court cannot determine where dispositive facts will be found until it ascertains which facts will be relevant to liability. If the defendant cannot establish what facts will be relevant at trial, it cannot establish where these facts will be found. It thus cannot establish the inconvenience of plaintiff's chosen forum with respect to the availability of evidence.

On remand, the district court must first address plaintiff's theory of prima facie liability. If that theory is not dispositive of the claim, it must delineate what issues will be dispositive and where the evidence relevant to those issues will be found. To the extent that the location of this evidence is disputed, the appellee, as defendant, will bear the burden of showing that this evidence is inaccessible or inconvenient to the forum.[9]

The court must then assign weight to that factor, and place that factor in the constellation of factors our decisions make relevant to its determination. We do not foreclose a dismissal on *forum non conven-*

---

**9.** In this regard, we note that Transytur need not submit affidavits identifying precisely what witnesses they would call and what their testimony would be. However, it "must provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft,* 454 U.S. at 258, 102 S.Ct. at 267.

*iens* grounds once the issues have been clearly delineated; the court may well find that most or all of the relevant evidence will be found in Venezuela, and that this factor is so important in this case that the lawsuit should be tried there. However, the court must weigh the advantages of the United States forum in the balance, such as its familiarity with the law that will govern the suit. *See Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843. It should also consider the interest, if any, of the forum in having a United States court apply controlling United States statutes to shipping contracts that generate much local revenue and employment.[10] Finally, it must consider the prejudice and inconvenience suffered by the appellant if it is relegated to its home forum for resolution of its claim.

### VACATED and REMANDED.

10. Even if the bills of lading at issue here had not explicitly incorporated United States law, we note that the Carriage of Goods by Sea Act (COGSA) applies *ex proprio vigore* to every bill of lading which evidences a contract for the carriage of goods by sea to or from ports of the United States in foreign trade. 46 U.S.C. § 1300 (1976).

La Seguridad argues that the applicability of American law deprives the district court of discretion to decline jurisdiction, relying upon *Fisher v. Agios Nicolaos V,* 628 F.2d 308, 315 (5th Cir.1980), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981) and its progeny. *Fisher* and its progeny state that when the Jones Act applies to a seaman's suit for damages, a district court has no power to dismiss the suit on *forum non conveniens* grounds. La Seguridad appears to argue that whenever American law applies to a maritime suit involving foreigners, no matter what the type of suit or issues involved, the district court loses the ability to decline jurisdiction. We reject the contention that the applicability of American law is, in itself, a dispositive factor.

Our cases construing the Jones Act, 46 U.S.C. § 688 (1976 & Supp. V 1981), a broadly remedial statute giving seamen injured in the course of their employment a right of action for damages at law, indicate only that where Congress has given the federal courts a special responsibility to implement federal law, that duty will outweigh factors of convenience and mandate that the suit be heard. If federal law applies to a case in which a *forum non conveniens* dismissal has been sought, the court must inquire further to determine if Congress has entrusted the federal courts with a special duty to implement that federal law, a duty mandat-

ing that the case should be heard. The court must ascertain if there is anything about the specific federal statute which indicates that Congress implicitly spoke to, and rejected, the application of *forum non conveniens* doctrine to a suit thereunder. *Cf. Baltimore & O.R.R. v. Kepner,* 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28 (1941) (*forum non conveniens* does not apply to claims under the Federal Employers' Liability Act); *United States v. National City Lines, Inc.,* 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948) (*forum non conveniens* does not apply to the choice of forums given a plaintiff under § 12 of the Clayton Act, 15 U.S.C. § 22 (1976)). The inquiry, after consideration of all the relevant materials, is "whether the legislative purpose and the effect of the language used to achieve it were to vest the power of choice in the plaintiff or to confer power upon the courts to qualify his selection." *National City Lines,* 334 U.S. at 597, 68 S.Ct. at 1182.

Seen in this light, our Jones Act cases would appear to have little bearing on claims governed by COGSA, and La Seguridad cites no case in which the applicability of COGSA was held to bar dismissal on *forum non conveniens* grounds. In any event, we believe the district court, with the advantage of delineated issues and a fully-developed record should determine in the first instance the impact of the applicability of COGSA on its *forum non conveniens* determination. After determining how this case fits in the COGSA legislative scheme, the court must inquire if there is anything in that legislative scheme which compels it to hear the case and deprives it of discretion to dismiss on *forum non conveniens* grounds.