[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 22, 2009
THOMAS K. KAHN
CLERK

No. 09-10603

_____

D. C. Docket No. 08-20661-CV-JEM

RENE WILSON, as Personal Representative
of the Estate of Daisy Scott Emory, Deceased,

Plaintiff-Appellant,

versus

ISLAND SEAS INVESTMENTS, LIMITED,
a Bahamian company,
d.b.a. Island Seas Resort,
ISLAND PALM INVESTMENTS, LIMITED,
Island Palm Resort,
d.b.a. Island Palm Resort,
ROBERT WILLIAM "BILL" CARLSON,
individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 22, 2009)

Before CARNES and HULL, Circuit Judges, and LAWSON,[*] District Judge.

LAWSON, District Judge:

This case arises from the unfortunate death of Daisy Scott Emory, who died while on vacation in the Bahamas. At issue in this appeal is whether the district court abused its discretion in dismissing the plaintiff-appellant's suit on forum non conveniens grounds. For the following reasons, we reverse and remand this matter to the district court for further proceedings.

## I. BACKGROUND

### A. Factual Background

In 2006, Emory purchased a discounted vacation package at the Island Palm Resort on Grand Bahama Island, Bahamas. The vacation package required her to tour the Island Palm's sister hotel, the Island Seas, in order to attend a timeshare presentation. Emory traveled to the Bahamas with her daughter, sister, and two cousins. While at the Island Seas, Emory and her party purchased tickets for a banana boat ride from Paradise Watersports, LLC, a vendor which operated a kiosk near the front desk. Paradise Watersports leased the kiosk space at the Island Seas in order to market its services directly to guests and visitors of the resort.

---

[*]Honorable Hugh Lawson, United States Senior District Judge for the Middle District of Georgia, sitting by designation.

George Douglas, a Paradise Watersports employee, was in charge of towing the banana boat. The plaintiff, the representative of Emory's estate, alleges that Emory notified Douglas that she and another member of her party could not swim. The plaintiff also alleges that Douglas gave Emory a life vest that was too small and worn, but assured her that it would keep her afloat if necessary.

While Emory and three of her family members were riding on the banana boat, the boat capsized, and Emory fell into the water. Douglas was operating the tow boat at that time. Emory eventually died, though the parties dispute whether or not she drowned.

Emory's daughter, plaintiff-appellant Rene Wilson, filed a lawsuit in the United States District Court for the Southern District of Florida as the personal representative of Emory's estate, alleging negligence, vicarious liability, and fraud. In her Corrected Second Amended Complaint, the plaintiff named Island Seas Investments, Ltd., d/b/a Island Seas Resort; Island Palm Investments, Ltd., d/b/a Island Palm Resort; Aqua Sun Investments, Inc.; and Robert William "Bill" Carlson as defendants. Carlson owns Island Palm Investments and Island Seas Investments. Paradise Watersports and Douglas were not named as defendants. The plaintiff subsequently dismissed all of her claims against Aqua Sun Investments, Inc.

At the time of her death, Emory was an Orlando, Florida resident. Orlando is located in the Middle District of Florida. Emory's estate is being probated in Orange County, Florida, which is located in the Middle District. Emory's sister and two cousins who witnessed Emory's death all live in the Middle District of Florida. The plaintiff is also a resident of the Middle District of Florida. All of the fact witnesses concerning damages, including family members, friends, doctors, and Emory's employer, are residents of the United States, most in various parts of Florida. Documentary evidence relating to damages is also located in Florida.

Douglas is a resident of the Bahamas. According to the plaintiff, he is the only witness to the incident on the boat who is not a Florida resident. Douglas is no longer employed by Paradise Watersports, and may no longer be located in the Bahamas, as further discussed *infra*. Paradise Watersports is owned by two Bahamian residents.

Defendant Carlson is a permanent resident of the Bahamas. For more than 30 years, he owned and operated businesses in Florida. At the time the lawsuit was filed, he owned and was an officer or director of at least nine Florida corporations, including Aqua Sun Investments, which the plaintiff contends essentially runs both the defendant Island Seas and the defendant Island Palm out of Ormond Beach, Florida.

The defendants filed a motion to dismiss the plaintiff's complaint for improper venue. They argued that no legitimate basis existed for the case to be heard in the Southern District of Florida, and that under the forum non conveniens test, the appropriate forum for the case was the Bahamas.

In support of her response to the defendants' motion to dismiss, the plaintiff presented an affidavit from a Bahamian attorney listing the ways having to file the case in the Bahamas would be detrimental to the plaintiff. The affidavit states that contingency fee contracts are outlawed in the Bahamas, so the plaintiff would have to pay her attorneys an hourly fee; that the attorney's hourly fee was $600, which was typical; that the plaintiff's attorneys from the United States would not be permitted to prosecute an action in the Bahamas on her behalf; that the defendants may apply to a Bahamian court to require the plaintiff to post security for litigation costs; that if the plaintiff should not prevail in a Bahamian action, the Bahamian court could assess not only costs against her, but all or part of the defendants' attorneys' fees as well; that it would likely take two to three years for the case to get to trial in the Bahamas; that a Bahamian court has very little power to compel foreign persons to give testimony; that discovery is permissible only after the close of pleadings, in a separate action; and that it was unlikely that a Bahamian court would grant the plaintiff a jury trial.

5

The plaintiff also filed an affidavit of her own, stating that her witnesses were all in the United States and mostly in Florida. The affidavit also stated that she would not be able to litigate her claim if the case was heard in the Bahamas, rather than in Florida:

> There were three family members who traveled with my mother to the Bahamas and they are all witnesses to her death. These include our cousins, Syretta Wright, Kyendah Wood, and my mother's sister, Roxeen Williams. **All three are Florida residents.** All of the deceased' [sic] treating physicians reside and work in Florida. The Estate does not have money to bring these doctors or witnesses to the Bahamas for trial there. I have learned that continency [sic] legal contracts are prohibited in the Bahamas. The Estate does not have assets that could be sold in order to pay for hourly legal representation in the Bahamian Courts. I have also learned that a bond would be required in order to bring this matter in the Bahamas. The Estate does not have monies to post a bond in order to proceed with litigation. Should the Estate be forced to post a bond or hire hourly legal representation, we could not afford to continue to prosecute this matter and we would be shut out of any recovery for the death of our mother.

(emphasis in original) (Doc. 102-2, paragraphs 9, 17-22).

Neither the plaintiff's affidavit nor the attorney's affidavit was challenged or rebutted by the defendants.

B.   **Procedural Background**

The district court granted the defendants' motion to dismiss, finding that the

6

balance of conveniences strongly favored dismissal and that the Bahamas was the proper forum for the plaintiff's claims. The plaintiff appeals that ruling, arguing that the district court failed to use the proper standard to evaluate the forum non conveniens motion.

## II. STANDARD OF REVIEW

This Court "may only reverse a district court's dismissal based on *forum non conveniens* if it constitutes a clear abuse of discretion." Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1288 (11th Cir. 2009) (quoting Membreno v. Costa Crociere S.p.A., 425 F.3d 932, 935-36 (11th Cir. 2005)). It is well settled that abuse of discretion review is "extremely limited" and "highly deferential." Id. When this Court employs the abuse of discretion standard, it "must affirm unless [it] find[s] that the district court has made a clear error of judgment, or has applied the wrong legal standard." Id. (quoting United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*)). "[W]here the [district] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). "[T]he court abuses its discretion when it fails to balance the relevant factors." La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 (11th Cir. 1983). "[W]here the

court does not weigh the relative advantages of the respective forums but considers only the disadvantages of one, it has abused its discretion." Id.

### III. DISCUSSION

Under the doctrine of forum non conveniens, "when an alternative forum has jurisdiction to hear a case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." Am. Dredging Co. v. Miller, 510 U.S. 443, 447-448, 114 S.Ct. 981, 985, 127 L.Ed.2d 285 (1994) (quotation marks, alterations, and citation omitted).

A defendant invoking forum non conveniens "bears a heavy burden in opposing the plaintiff's chosen forum." Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 549 U.S. 422, 430, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007). A plaintiff's choice of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum, particularly where the plaintiffs are citizens of the United States. SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100-02 (11th Cir. 2004).

A forum non conveniens dismissal is appropriate where:

8

1. the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;

2. the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;

3. if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and

4. the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

Aldana, 578 F.3d at 1289-90 (citations omitted).

## A.    Adequate alternate forum

The district court determined that the Bahamas is an adequate alternate forum for the plaintiff's claims.  While the plaintiff argued in the district court that the Bahamas was not an adequate alternate forum, she has abandoned that argument on appeal.

## B.    Private interest factors

The plaintiff contends that the district court erred in determining that the private interest factors weighed in favor of dismissal.

Private factors the district court should consider when analyzing a forum non

9

conveniens claim include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1356 (11th Cir. 2008). These factors are not exhaustive, and the district court should be flexible in applying them. King v. Cessna Aircraft Co., 562 F.3d 1374, 1381-82 (11th Cir. 2009). "A trial court will look at the private interests first and then, if the balance of the private interests are found 'to be in equipoise or near equipoise,' it will 'determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum.'" Id. at 1382 (quoting La Seguridad, 707 F.2d at 1307).

"[W]ith regard to the weighing of the private interests, the plaintiffs' choice of forum should rarely be disturbed 'unless the balance is strongly in favor of the defendant.'" SME Racks, 382 F.3d at 1101 (quoting Gulf Oil, 330 U.S. at 508). "This presumption in favor of the plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of this country." Id. (citing Leon v. Million Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001)). This Circuit has "long mandated that district courts 'require positive evidence of unusually extreme circumstances, and should be

10

thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" Id. (quoting La Seguridad, 707 F.2d at 1308 n. 7). However, "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper Aircraft, 454 U.S. at 255 n. 23.

The district court first determined that the ability to obtain witnesses weighed heavily in favor of litigating the case in the Bahamas. The district court stated that it was "not aware of a single witness who resides in the Southern District of Florida, including Plaintiff," and noted that the defendants argued that many important witnesses reside in the Bahamas. These two facts led the district court to examine the availability of compulsory process. The defendants identified five witnesses who were employed by Paradise Watersports at the time of the accident and currently reside in the Bahamas, including Douglas, the owners of Paradise Watersports, and the employee who sold the banana boat tickets. The district court determined that it did not have compulsory process over these witnesses because the defendants did not have control over them. The district court deemed these employees to be of "paramount importance" in the case, because

11

without these witnesses, the defendants could not adequately defend against the plaintiff's claims. The district court further found that even if the defendants were able to obtain deposition testimony from these witnesses, the inability to produce the witnesses in person in Florida would be prejudicial to the defendants. Finally, the district court noted that the plaintiff could exert personal jurisdiction over the Bahamian witnesses in the Bahamas because the alleged tort occurred in the Bahamas.

Next, the district court determined that the relative ease of access to sources of proof weighed in favor of litigating the case in the Bahamas. The district court again raised concerns about the lack of compulsory process, this time over pertinent documentary evidence located in the Bahamas, including insurance policies, prior accident reports, safety violation reports, police investigation reports, and medical records, all of which were beyond the reach of the district court. The district court also noted that "Plaintiff has failed to identify a single piece of evidence located in the Southern District of Florida."

The district court also expressed concerns about the defendants' ability to implead potential third-party tortfeasors. The plaintiff alleged that Paradise Watersports and Douglas were primarily and directly responsible for Emory's death, but did not name those parties as defendants. If the case was tried in Florida,

12

the defendants would not be able to implead Paradise Watersports or Douglas, but would be able to do so if the case was tried in the Bahamas. The district court found that the ability to implead potential third-party tortfeasors weighed strongly in favor of litigating the case in the Bahamas.

The district court considered the Southern District of Florida to be the relevant forum for purposes of the forum non conveniens test. In weighing the private interests, the district court looked only at the contacts between the case and the Southern District. Limiting its consideration to just one judicial district was improper. "[T]he relevant forum for purposes of the federal [forum non conveniens] analysis is the United States as a whole." Aldana, 578 F.3d at 1293; Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1303 (11th Cir. 2002) ("[F]ederal courts, in the *forum non conveniens* context, do not focus on the connection between the case and a particular state, but rather on the connection of the case to the United States as a whole.") The district court should have analyzed the forum non conveniens question by looking at all contacts between the case and the whole United States. This would include consideration of the plaintiff's witnesses who are located in Florida, including the eyewitnesses and the damages witnesses, as well as the documentary evidence located in Florida, including documents and records relating to damages. While the district court stated that it was unaware of

13

any witnesses or evidence located in the Southern District of Florida, whether the witnesses and documents are located in the Southern District as opposed to the Middle District is irrelevant in a federal forum non conveniens analysis. It was error for the district court to consider only the contacts that the case had with the Southern District of Florida.

The district court also erred in failing to consider, except in regard to whether the Bahamas was an adequate alternate forum, the undisputed financial difficulties the plaintiff would face if the case had to be tried in the Bahamas. The district court is correct that the financial inability of the plaintiff to bring the lawsuit in the Bahamas is not determinative, and does not affect the adequate alternate forum factor. *See* Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1430 (11th Cir. 1996). However, "[a] party's claim of financial hardship is not an appropriate aspect of determining the *availability* of an alternative forum, but rather is a factor to be considered in the balancing of interests that bear on convenience, a balancing process that is to be performed *after* identifying an alternative forum." Gross v. British Broad. Corp., 386 F.3d 224, 231 (2nd Cir. 2004) (emphasis in original); *see also* Murray v. British Broad. Corp., 81 F.3d 287, 292-93 (2nd Cir. 1996) (holding that the plaintiff's "claim of financial hardship may not be considered in determining the *availability* of an alternative

14

forum but must be deferred to the balancing of interests relating to the forum's convenience"); Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 720 (1st Cir. 1996) (discussing private interest factors weighing in the plaintiffs' favor, including the fact that the plaintiffs "would face financial obstacles because Hong Kong law prohibits contingent fee agreements and requests that they deposit an amount equal to [the defendant's] costs with the court"). While the district court considered the facts presented in the affidavits filed by the plaintiff in determining whether the Bahamas was an adequate alternate forum, the district court's order does not show that it considered these facts, as it should have, in weighing the private interests.

In deciding to dismiss the case, the district court relied heavily on the fact that key witnesses for the defendants, including Douglas, were located in the Bahamas and were outside the compulsory process of the district court, and the fact that certain parties, including Douglas, could not be impleaded by the defendants if the case remained in Florida. During oral argument, counsel for the defendants conceded that Douglas may no longer be in the Bahamas, may not be found, and for that reason, may not be a witness regardless of where the lawsuit is heard. On remand, the district court should inquire into whether Douglas can be located. Any doubts as to whether he can be found in the Bahamas should be taken into account in weighing the availability of witnesses and the ability to implead potential third-

party tortfeasors.

It should also be noted that the defendants, in their brief to this Court, conceded that they would be amenable to judgment in the Bahamas if the lawsuit were reinstated in the Bahamas. Specifically, the defendants said that "[a]ll three of the Defendants in this case are residents of the Bahamas and are subject to the jurisdiction of the courts in that country. Any judgment rendered in the Bahamas would obviously be enforceable." (Appellee Br. at 40). The district court should take this concession into account on remand.

## C.     Public interest factors

Because reversal and remand are appropriate based upon the district court's errors in weighing the private interest factors, we need not determine whether the district court abused its discretion in weighing the public interest factors. *See* SME Racks, 382 F.3d at 1104.

## D.     Reinstatement of lawsuit in alternate forum

In conducting a forum non conveniens analysis, the district court must "ensure[] that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice." Aldana, 578 F.3d at 1290. The district court did not address this step before dismissing the case. On remand, the district court should consider this issue in deciding whether to dismiss the case on forum non

16

conveniens grounds.

## IV.  CONCLUSION

We conclude that the district court abused its discretion in dismissing this case and therefore REVERSE and REMAND for further proceedings consistent with this opinion.  This is not to say, of course, that the district court cannot again determine that the case should be tried in the Bahamas after further development of the factual record and further consideration of the private interests as directed by this opinion.[1]

REVERSED and REMANDED

---

[1]We note that during oral argument, counsel for the plaintiff admitted that the case should have been filed in the Middle District of Florida, and stated that the plaintiff would not have any objection to it being transferred there.