[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13070
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-60946-WJZ

FIRESTONE BUILDING PRODUCTS COMPANY, LLC,

Plaintiff - Appellee,

versus

ANTERO RAMOS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 6, 2018)

Before TJOFLAT, NEWSOM, and JULIE CARNES Circuit Judges.

PER CURIAM:

Firestone Building Products Company, LLC (Plaintiff) filed suit against its former employee Antero Ramos for fraud, alleging that he orchestrated a scheme from his Florida office to submit false invoices for sales in Brazil that never occurred in an effort to boost his bonus compensation. In the district court, Ramos moved to dismiss for *forum non conveniens*, filed an untimely motion for an extension of time to respond to Plaintiff's summary judgment motion, submitted a Rule 60(b) motion for relief from the court's summary judgment order, and moved for a trial continuance. The district court denied each motion. Ramos appeals these denials but, because we conclude that the district court did not abuse its discretion, we affirm.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff is a limited liability company that sells building materials and products, including roofing and wall products. Plaintiff is headquartered in Indianapolis, Indiana and organized under Indiana law. Plaintiff's parent company, Bridgestone Americas, Inc., is based in Nashville, Tennessee.

In 2006, Ramos began working for Bridgestone America's subsidiary in Brazil. In 2009, Ramos was promoted to work for Plaintiff as the General Manager of Plaintiff's Latin American and Caribbean operations. As part of the

2

promotion, Ramos moved to Fort Lauderdale, Florida and worked out of Plaintiff's office there.  As General Manager, Ramos had authority to transact business on behalf of Plaintiff and oversaw Plaintiff's Brazilian sales and operations (as well as the sales and operations in other Latin American and Caribbean countries).  On top of his base salary, Ramos was eligible for bonuses contingent on sales volume, profit, and other factors.

In January 2015, Ramos's supervisor learned that auditors had discovered improprieties in Brazilian sales transactions from December 2014.  The auditors found evidence that Ramos had directed his subordinates to create false invoices for roughly $22 million worth of sales that never actually occurred.  As a result, Ramos was terminated from his position with Plaintiff.  Ramos filed a lawsuit against Bridgestone America's Brazilian subsidiary in Brazil alleging wrongful termination and other claims.

### B.    Procedural History

In May 2015, Plaintiff filed this lawsuit against Ramos in the Southern District of Florida.  Plaintiff's amended complaint alleged, among other things, that Ramos breached his fiduciary duty to the company and engaged in a conspiracy to defraud Plaintiff through a false invoicing scheme in an effort to

3

boost his bonuses.  Ramos moved to dismiss for *forum non conveniens*, arguing

that Brazil was the more appropriate forum.  The district court denied the motion.

On September 6, 2016, Plaintiff moved for summary judgment.  Under the

district court's scheduling order, Ramos's response was due on September 26.

Ramos failed to file a response by the deadline.  On October 21, nearly a month

after the deadline had passed, Ramos moved for an extension of time to file his

reply.  The district court denied the motion for an extension.  Ruling on Plaintiff's

unopposed summary judgment motion, the district court granted summary

judgment to Plaintiff on its fraud, conspiracy, and breach of fiduciary duty claims,

denied summary judgment on the unjust enrichment, constructive trust, and

conversion claims, and reserved the determination of damages for trial.  Plaintiff

later voluntarily dismissed the claims it had not won summary judgment on.

Damages were still left to be determined.  On April 7, 2017, at the pretrial

conference, Ramos's counsel moved to withdraw from the case.  The district court

granted the motion, set a new trial date of May 8, and informed Ramos that the

court would not grant future continuances.  Ramos's new counsel entered his

appearance on April 18 and filed a motion for a trial continuance and a motion

under Fed. R. Civ. P. 60(b) to set aside the court's summary judgment order on the

grounds that Ramos's original counsel was negligent.  The court denied both

4

motions on May 1.  On May 3, Ramos's new counsel filed a motion to withdraw due to Ramos's inability to comply with the financial obligations of trial.  The court granted the motion and pushed back trial another week to May 15.

At the one-day trial to determine damages, Ramos represented himself *pro se*.  At the close of the evidence, the district court granted Plaintiff's oral motion for judgment as a matter of law under Federal Rules of Civil Procedure 50.  The court entered final judgment in favor of Plaintiff.

Ramos filed a timely appeal challenging the district court's rulings on the motion to dismiss for *forum non conveniens*, the motion for an extension of time to respond to Plaintiff's summary judgment motion, the Rule 60(b) motion, and the motion for a trial continuance.

## II.     STANDARD OF REVIEW

We may reverse a district court's *forum non conveniens* determination "only when there has been a clear abuse of discretion."  *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).  "It is well settled that abuse of discretion review is extremely limited and highly deferential."  *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1268 (11th Cir. 2009) (internal quotation marks omitted).  We "must affirm unless we find that the district court has made a

5

clear error of judgment, or has applied the wrong legal standard." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288 (11th Cir. 2009) (internal quotation marks omitted). "Factual determinations are reviewed for clear error." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310 (11th Cir. 2001)).

We also review for abuse of discretion the denial of a motion for an extension of time to respond to a summary judgment motion, *Barrett v. Walker County School District*, 872 F.3d 1209, 1230 (11th Cir. 2017), the denial of a Rule 60(b) motion, *Toole v. Baxter Healthcare Corporation*, 235 F.3d 1307, 1316 (11th Cir. 2000), and the denial of a motion for a continuance, *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1296 (11th Cir. 2005).

## III.    DISCUSSION

### A.    Motion to Dismiss For *Forum Non Conveniens*

"To obtain dismissal for *forum non conveniens*, '[t]he moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (alteration in original) (quoting *Leon*, 251 F.3d at 1310–11). "A plaintiff's choice

6

of forum is entitled to deference, and there is a presumption in favor of a plaintiff's choice of forum, particularly where the plaintiffs are citizens of the United States." *Wilson*, 590 F.3d at 1269. But a plaintiff's forum choice is not dispositive. *Piper Aircraft*, 454 U.S. at 255 n.23. Thus, "[a] defendant invoking forum non conveniens 'bears a heavy burden in opposing the plaintiff's chosen forum.'" *Wilson*, 590 F.3d at 1269 (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)). To rule for the defendant, the district court must find "positive evidence of unusually extreme circumstances" and be "thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *Aldana*, 578 F.3d at 1293 (internal quotation marks omitted).

The only analysis at issue here is the district court's weighing of the private and public interest factors.[1] "[W]here the [district] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft*, 454 U.S. at 257. Conversely, "[t]he court abuses its discretion when it fails to balance the relevant factors," or if it "does not weigh the relative advantages of the

---

[1] Plaintiff and Ramos do not dispute that Brazil is an adequate alternative forum and that Plaintiff can reinstate its suit there without inconvenience or prejudice.

7

respective forums but considers only the disadvantages of one." *Wilson*, 590 F.3d at 1269 (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983)).

The district court did not abuse its discretion in denying Ramos's motion.[2] The private interest factors include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Tazoe*, 631 F.3d at 1331 (alteration in original) (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).  Although many witnesses and documents were located in Brazil, many were also located in the United States.  Any Brazilian documents and witnesses under Plaintiff's control were available to Ramos through standard discovery procedures, and all other evidence located in Brazil was available through compulsory processes under the Inter-American Convention on Letters Rogatory, Jan. 30, 1975, S. Treaty Doc. No. 27, 1438 U.N.T.S. 288, and the Brazilian Code

---

[2]  For this analysis we look only at the amended complaint, because the amended complaint "superseded the former pleadings," meaning that "the original pleadings were abandoned by the amendment" and became "a legal nullity."  *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (alterations adopted) (internal quotation marks omitted).  Indeed, Ramos in his briefing before the district court focused on only the allegations of the amended complaint in his motion to dismiss.

of Civil Procedure.  The district court took all of this into consideration—including the costs to Ramos and potential translation burdens—and reasonably concluded that some factors favored a Brazilian forum, but more favored Plaintiff's choice. Although Ramos disagrees with the district court's analysis—namely, Ramos contends that the district court did not give sufficient weight to the costs Ramos faced, gave too much weight to Plaintiff's forum choice,[3] and did not adequately explain how much weight it gave to each of the factors—the court conducted the proper analysis and reached a reasonable conclusion based on the facts before it.

So too with the public factors.  Those factors include:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Tazoe*, 631 F.3d at 1333 (alteration in original) (internal quotation marks omitted) (quoting *Piper Aircraft*, 454 U.S. at 241 n.6).  The district court concluded that the

---

[3]  Ramos argues that Plaintiff should not benefit from the strong presumption that U.S. citizens receive when choosing a United States forum because Plaintiff is part of a multinational entity and regularly conducts business abroad.  *See Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991) (observing that "[w]hen an American corporation doing extensive foreign business brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's United States citizenship").  Ramos acknowledges, however, that this Court has no binding precedent that establishes that American corporations doing business internationally receive a weaker presumption.  And we see no reason to address whether we agree with such a principle, given that it would not alter the outcome here.

9

public interest factors weighed strongly in favor of Plaintiff's forum choice. The court found that the United States had a strong local interest because Ramos orchestrated the fraud scheme from his office in Fort Lauderdale and the injury to Plaintiff was suffered in the United States. For the same reasons, the court concluded that, although the scheme involved some Brazilian actors and transactions, a local jury would not be unfairly burdened by deciding the case. Further, the court identified that Plaintiff's claims arose under Florida law and that Brazilian law and customs were largely inapplicable, so it made more sense for a United States forum to handle the case rather than a Brazilian forum unfamiliar with the governing Florida law. Ramos's only quibble with the district court's analysis is that he contends that the controversy at the heart of this lawsuit lies in Brazil, not the United States, so a Brazilian court has a stronger local interest in deciding the case. But, again, the district court recognized that some conduct occurred in Brazil, but reasonably concluded that the United States had a stronger local interest, and that the other public interest factors weighed in favor of the United States as well.

In sum, the district court considered the relevant public and private interest factors and balanced those factors reasonably. The court did not abuse its discretion in denying Ramos's motion to dismiss for *forum non conveniens*.

10

### B.    Motion For An Extension Of Time To File A Reply To Plaintiff's Summary Judgment Motion

The district court also did not abuse its discretion when it denied Ramos's untimely motion for an extension of time to file its reply to Plaintiff's motion for summary judgment.  "District courts have unquestionable authority to control their own dockets," including "broad discretion in deciding how to best to manage the cases before them." *Smith v. Psychiatric Solutions, Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (internal quotation marks omitted); *see also Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004) ("A district court must be able to exercise its managerial power to maintain control over its docket. . . . to administer effective justice and prevent congestion.").  Accordingly, "we have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011).  Here, the district court denied Ramos's motion for an extension because it was filed twenty-five days after the scheduling order deadline for Ramos's reply.  The court observed that Ramos's only explanation for the delay and the need for an extension were Ramos's "very limited resources and a language barrier"—issues that, if true, should have become apparent much earlier, considering that the same counsel had worked with Ramos for over a year and had filed major pleadings (including two motions to dismiss for *forum non conveniens*,

11

a declaration from Ramos, and an answer to Plaintiff's amended complaint) long before the reply deadline.  On appeal, Ramos repeats the same excuse and emphasizes the harm from not granting the extension and allowing Ramos to file a reply.  But the facts make plain that the district court did not abuse its discretion by denying Ramos's untimely motion and holding him to the scheduling order.

## C.    Rule 60(b) Motion

Ramos also argues that the district court abused its discretion when it denied Ramos's Rule 60(b) motion for relief from the court's order granting partial summary judgment to Plaintiff.  To show that the district court abused its discretion, Ramos "must demonstrate a justification so compelling that the court was required to vacate its order."  *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (quoting *Solaroll Shade and Shutter Corp. v. Bio–Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986)).

Assuming that Ramos could properly seek relief from the district court's interlocutory summary judgment order under Rule 60(b),[4] the district court did not

---

[4]  We note that it is not clear that a party can obtain relief from an interlocutory summary judgment order under Rule 60(b), because Rule 60(b) authorizes a district court to grant relief from "a final judgment, order, or proceeding."  *See Kapco Mfg. Co., Inc. v. C & O Enters., Inc.*, 773 F.2d 151, 154 (7th Cir. 1985) (explaining "why Rule 60(b) must be limited to review of orders that are independently 'final decisions' under 28 U.S.C. § 1291"); *see also Mullins v. Nickel Plate Mining Co., Inc.*, 691 F.2d 971, 974 (11th Cir. 1982) ("Rule 60(b) applies only to final judgments.").  Because the parties do not raise this issue in their briefing and it is unnecessary for the resolution of this appeal, we do not address it further.

12

abuse its discretion by denying such relief. Ramos argues that the district court should have granted relief under Rule 60(b)(1)[5] because Ramos's counsel was negligent about informing Ramos of the summary judgment deadline, among other things, while Ramos himself diligently monitored his case. But Ramos's only explanation to the district court for why his counsel failed to file a timely reply was that counsel "chose to ignore the deadline to respond to the Motion for Summary Judgment" and that the motion for an extension was untimely "for reasons that remain unexplained." That justification is not so compelling as to require reversal. *See Solaroll Shade*, 803 F.2d at 1132 ("[A]n attorney's negligent failure to respond to a motion does not constitute excusable neglect.").

Ramos also argues that his counsel's negligence justifies relief under Rule 60(b)(6).[6] But attorney negligence is a grounds for relief under Rule 60(b)(1), not (b)(6). Because (b)(1) and (b)(6) are mutually exclusive, the district court could not grant relief for attorney negligence under (b)(6), *see Cavaliere*, 996 F.2d at 1115; *Solaroll Shade*, 803 F.2d at 1133, and did not abuse its discretion by declining to do so.

---

[5] Rule 60(b)(1) authorizes a district court to grant relief for "mistake, inadvertence, surprise, or excusable neglect."

[6] Rule 60(b)(6) is the residual subsection and grants relief for "any other reason that justifies relief."

13

**D.    Motion For A Trial Continuance**

Finally, Ramos asserts that the district court should have granted his motion for a trial continuance.  "The denial of a request for continuance does not constitute an abuse of discretion unless it is arbitrary and unreasonable and severely prejudices the moving party."  *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017). We consider four factors in this analysis:  (1) "the extent of appellant's diligence in his [or her] efforts to ready his [or her] defense prior to the date set for hearing," (2) "how likely it is that the need for a continuance could have been met if the continuance had been granted," (3) "the extent to which granting the continuance would have inconvenienced the court and the opposing party," and (4) "the extent to which the appellant might have suffered harm as a result of the district court's denial."  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1351 (11th Cir. 2003) (alterations in original) (quoting *Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th Cir. 1987)).

The district court did not abuse its discretion in denying Ramos's motion. Ramos contends that granting the continuance would have inconvenienced Plaintiff and the district court little and that Ramos was heavily prejudiced because it resulted in his counsel withdrawing.  Yet the district court informed Ramos at the pretrial conference that it would not grant a continuance if Ramos chose to obtain

14

new counsel a month before trial. Nevertheless, the court pushed back the trial when Ramos's original counsel withdrew and did so again when his new counsel withdrew. Further, the record does not establish that Ramos's counsel withdrew because of the denial of the continuance. According to the withdrawal motion, Ramos's counsel withdrew because Ramos had been "unable to fully comply with [his financial] obligations thereby making it impossible for the undersigned counsel to continue to effectively represent [Ramos]," so "continued representation . . . present[ed] an unreasonable financial burden" for counsel. The motion does not raise a lack of time or the district court's denial of the continuance as a reason for counsel's withdrawal, just financial hardship in preparing for and attending trial. Thus, we cannot conclude that denial of the continuance prejudiced Ramos. For the same reason, because Ramos's counsel never cited the need for a continuance or a lack of time as a reason prompting withdrawal, Ramos has failed to show that granting the motion would have solved Ramos's alleged need for a continuance by preventing his counsel from withdrawing. Further, there is no evidence that Ramos had been diligent preparing for trial. At the pretrial conference (with Ramos's original counsel), Ramos submitted no exhibits or witnesses for the joint pretrial statement. And Ramos's motion for a continuance admitted, while laying the blame on Ramos's original counsel, that Ramos had

15

performed no discovery since the lawsuit had begun nearly two years earlier.

Taking all of this into account, we hold that the district court did not abuse its

discretion in denying Ramos's motion for a continuance.

**AFFIRMED.**

16