Jared **ROSEN**, as Personal Representative of the Estate of Raymond Donat Charron, Jr., Deceased, and for the benefit of Lottie Mae Charron, Individually, and as Surviving Spouse, and Lottie Mae Charron, Individually, and as Surviving Spouse, Plaintiffs,

v.

**EXECUJET SERVICES LLC**, a Florida Limited Liability Company, Aerologistics II LLC, a Washington Limited Liability Company, Mitchell Enterprises Limited d/b/a Regional Air Services, a Bahamas Corporation, Mi-

chael Humphrey, Calvin Humphrey, Lynden Stephenson Mitchell a/k/a Steve Mitchell, Chad Adderley, John Doe Corporation #1 through John Doe Corporation #5, being an unknown entity that owned and/or operated a Hawker Beechcraft Model 1900C Aircraft Tail Number N413CM, Serial Number UC–13 on February 28, 2013, John Doe #1 Through John Doe #5, being the owners and managers of Mitchell Enterprises Limited d/b/a Regional Air Services, John Doe #6 through John Doe #10, being the owners and managers of Aerologistics II LLC, Defendants.

Case No. 15–60681–CIV

United States District Court,
S.D. Florida.

Signed March 12, 2017

Filed 03/13/2017

Jared Michael Rosen, Gary Scott Rosen, Rosen Law L.L.C., Palm Beach Gardens, FL, for Plaintiff.

Emmet Jay Schwartzman, Carlton Fields Jorden Burt, P.A., Miami, FL, for Defendant.

## ORDER GRANTING MOTIONS TO DISMISS ON *FORUM NON CONVENIENS* GROUNDS

KENNETH A. MARRA, United States District Judge

THIS CAUSE comes before the Court on Defendants Execujet Services, LLC ("Execujet"), Michael Humphrey, and Calvin Humphrey's ("the Execujet Defendants") Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* (DE 89), and Defendant Aerologistics II, LLC's ("Aerologistics") Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* (DE 90). The motions are now fully briefed (DE 93, 98, 99) and are ripe for review. The Court has carefully considered the motions and the record and is otherwise fully advised in the premises.

Notwithstanding the strong presumption in favor of Plaintiff's chosen forum, because the critical witnesses in this case are located in the Bahamas outside the subpoena power of the Court and since Defendants cannot implead a potential Bahamian third party in this case, the Court is thoroughly convinced that Defendants would suffer material injustice if forced to defend this action in this forum instead of the Bahamas. Further, and notwithstanding the interest of the United States in adjudicating this matter, the fact that the Bahamas has a substantial interest in ad-

judicating a dispute occurring entirely on Bahamian soil and concerning the safety of aircraft maintenance at its airport, the remote connection of this lawsuit to this forum, and the likely application of Bahamian law, all militate in favor of dismissal. As a result, as explained in greater detail below, the Motions to Dismiss based upon *forum non conveniens* grounds are granted.

## I. BACKGROUND

This is a wrongful death case. The decedent, Raymond Donat Charron, Jr., died in the Bahamas on February 28, 2013, when the left landing gear of the aircraft that he was servicing at a Bahamas airport collapsed on him.

In the Amended Complaint, Plaintiff Jared Rosen, as Personal Representative of the Estate of Raymond Donat Charron, Jr. and for the benefit of Lottie Mae Charron, brings negligence and related claims against Defendants Execujet, Michael Humphrey, Calvin Humphrey, and Aerologistics arising out of the incident that occurred in the Bahamas.[1] (DE 26, Amended Complaint ("Compl.").) Plaintiff claims that Defendants failed to maintain the aircraft properly, which caused the landing gear to collapse on the decedent.

Plaintiff, the personal representative, is an individual residing in Palm Beach County, Florida. (*Id.* ¶ 5.) The decedent's spouse and only survivor, Lottie Mae Charron, resides in the state of Connecticut. (DE 89, Def.'s Mot. at 6.)

Execujet, which is a limited liability company, is a citizen of Texas for purposes of diversity jurisdiction. (DE 1, Notice of Removal ¶ 8). Execujet has its principal place of business in Fort Lauderdale, Florida. (DE 93–12, Pl.'s Resp. Ex. 12.) Aerologistics, which is a limited liability company, is a citizen of Texas for purposes of diversity jurisdiction. (DE 1, Notice of Removal ¶ 9.) Aerologistics has its principal place of business in North Seattle, Washington. (DE 26, Compl. ¶ 37.) At the time of filing and presently, Michael Humphrey is a citizen of the state of Georgia. (DE 1, Notice of Removal ¶ 11.)[2] Calvin Humphrey is a citizen of the state of Texas. (DE 26, Compl. ¶ 11).

Defendants now move to dismiss the Amended Complaint filed against them on grounds of *forum non conveniens*.

## II. LEGAL STANDARD

 The federal doctrine of *forum non conveniens* allows the Court to use its inherent power to dismiss an action because of the inconvenience of the plaintiff's chosen forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Under the doctrine, dismissal is "appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

 In deciding a motion to dismiss based upon the doctrine of *forum non conveniens*, the Court must first consider whether an "adequate alternative forum"

---

1. The claims against Defendants Mitchell Enterprises Limited, d/b/a Regional Air Services ("Regional Air"), Lynden Stephenson Mitchell a/k/a Steve Mitchell, and Chad Adderley were dismissed. (DE 85.)

2. The First Amended Complaint (DE 26) alleges that Defendant Michael Humphrey was

a citizen of the state of Florida. (DE 26, Compl. ¶ 10.) However, Defendant Michael Humphrey has stated in the Notice of Removal that at the time of filing and presently he is a citizen of the state of Georgia, and Plaintiff has not refuted this allegation.

exists which has jurisdiction over the case. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983). The Court must then consider whether private interest factors suggest that the Court should disturb the strong presumption in favor of a plaintiff's choice of forum. *Id.* If the Court finds that the private interest factors are indeterminate, the Court must then proceed to consider whether considerations of public interest favor a trial in the foreign forum. *Id.* Dismissal is only warranted if these factors weigh heavily towards trial in the foreign forum. *Piper Aircraft*, 454 U.S. at 249, 102 S.Ct. 252. If the trial judge decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice. *La Seguridad*, 707 F.2d at 1307.

■■ The strong presumption in favor of the plaintiff's choice of forum is strongest when the plaintiff is a citizen or resident of the United States. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). To that end, "district courts [must] require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country." *Id.* (internal citations and quotation marks omitted).[3]

## III. DISCUSSION

### A. Adequate Alternative Forum

■■ A defendant will satisfy the initial burden of establishing that an adequate

alternative forum exists upon a showing that the defendant will submit to jurisdiction in the foreign forum and that the foreign forum allows the plaintiff the opportunity for "appropriate redress." *See Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252.

■■ An adequate alternative forum exists when the defendant is "amenable to process" in the foreign forum. *Piper Aircraft*, 454 U.S. at 254 n.22, 102 S.Ct. 252. Here, all four Defendants presently in this action "agree to submit, and will not challenge the jurisdiction of the Bahamian courts over this matter." (DE 89, Mot. at 3; DE 90, Mot. at 3.) Defendants' willingness to submit to the jurisdiction of the Bahamian courts satisfies the availability requirement.

As to the adequacy of the Bahamian courts, Defendants have pointed to case law indicating that the Bahamian legal system recognizes negligence actions like Plaintiff's claims in the instant case. (DE 89, Mot. at 3; DE 90, Mot. at 3.) Plaintiff has not intimated that Plaintiff's claims would not be recognized under Bahamian law. Regarding the timeliness of Plaintiff's claims, however, Plaintiff suggests that the Bahamas is not an adequate forum because the relevant statute of limitations for a wrongful death case in the Bahamas expired on February 28, 2016 and thus Plaintiff's claims would be time-barred. In response, all four Defendants "agree[ ] to waive any statute of limitations defense they may have under Bahamian law." (DE 98, Def.'s Reply at 3; DE 99, Def.'s Reply

---

**3.** Defendants have argued that less deference should be accorded to Plaintiff's choice of forum in this case for a variety of reasons. This Court need not decide whether less deference should be accorded Plaintiff's choice of forum under the circumstances of this case, because the Court concludes that the unfairness and the undue burden to Defendants of trying the case in this District strongly outweigh Plaintiff's choice of forum even when accorded greater deference.

at 3.) Based upon Defendants' express stipulations, there is no indication that the Bahamian courts would not afford Plaintiff an adequate remedy.

█ Moreover, courts are loathe to hold that other forums are inadequate. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001). Thus, the Court finds that the Supreme Court of the Bahamas is an adequate alternative forum for the instant action.

### B. Private Interest Factors

█ The Supreme Court has directed district courts to consider the "private interest of the litigant." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839. "[W]ith regard to the weighing of the private interests, the plaintiffs' choice of forum should rarely be disturbed unless the balance is strongly in favor of the defendant." *SME Racks*, 382 F.3d at 1101 (citation and internal quotation marks omitted). Factors considered to be in a litigant's private interest include the ease of access to sources of proof, availability of compulsory process for witnesses, cost of obtaining attendance of witnesses, ability to view the premises (if necessary),[4] and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839.

### 1. Access to Proof and Compulsory Process

█ Defendants argue that "important documentary evidence is ... located in the Bahamas, beyond the compulsory process of this court." (DE 89, Def.'s Mot. at 12; DE 90, Def.'s Mot. at 13.) Although Defendants are already in possession of several documents that originated in the Bahamas, there is one critical document that Defendants do not possess and could not obtain through the compulsory process of this Court if trial were conducted here. The written statement of Clint Cox, the only eyewitness to the incident, was taken by Sergeant Penn and is presently in the custody of the Royal Bahamas Police Force. (*Id.*) As Plaintiff suggests, however, it is possible that Cox's statement might be obtained through alternative means, such as through a letter rogatory to the Bahamian court system. Nevertheless, even though this factor concerning access to sources of documentary proof does not weigh strongly in favor of dismissal, the Court is thoroughly convinced that the other private interest factors, including access to testimonial evidence and the unavailability of process to compel unwilling witnesses,[5] heavily weigh in favor of dismissal, as discussed below.

Concerning testimonial evidence, Defendants have identified numerous vital witnesses, including the only eyewitness to the incident, who are located in the Bahamas and are therefore beyond the subpoena power of the Court. Defendants' list of prospective witnesses located in the Bahamas includes the following: (i) the only

4. Defendants have not suggested that it is necessary for the jury to view the relevant premises in the Bahamas in this action. Thus, this favor does not weigh in favor of dismissal.

5. Even if Cox's written statement could be obtained through alternative means, Cox's out-of-court statement and the out-of-court statements of other critical Bahamian witnesses would likely be excluded as inadmissible hearsay if the trial of this action were to proceed in this forum, which would prejudice Defendants. The out-of-court statements of the Bahamian witnesses would not likely be exempt from the definition of hearsay under Rule 801(d)(1) of the Federal Rules of Evidence, since the witnesses could not be compelled to testify at a trial in this forum and would not be subject to cross-examination concerning the statements. *See* Fed. R. Evid. 801(d)(1).

eyewitness to the incident, who is a former mechanic for Regional Air (Clint Cox); (ii) two first responders and eyewitnesses to the scene of the incident from the Royal Bahamas Police Force (Sergeant Penn (who interviewed and took a statement from Clint Cox) and Sergeant Curtis (who secured the scene)); (iii) an Aviation Safety Inspector, and Inspector-in-Charge, Bahamas, and first responder who took photographs of aircraft and inspected the wheel well (Delvin Major); (iv) a Flight Services Inspector, Bahamas Civil Aviation Department, who was scheduled to perform a safety inspection of the aircraft minutes after the incident occurred and later opined that the incident could have been avoided if maintenance had been employed (Philip Romer); (v) a pilot knowledgeable about the aircraft and eyewitness to the scene shortly after it occurred (Cerone Ramsey); (vi) former defendants and principals of Regional Air (Chad Adderley and Lynden Stephenson Mitchell); (vii) a former pilot of Regional Air who discussed with the decedent on the evening before the incident that a maintenance issue on the aircraft needed to be addressed before the inspection by Philip Romer (Christopher Adderley); (viii) medical personnel and first responders (Gary Rolle, Dennis Dames, Keysha Hanna, and Dr. Condelia Nairn); (ix) individuals who investigated (Deion Demeritte, Airworthiness Inspector, Flight Services Inspector, Department of Civil Aviation, Bahamas) or repaired (Wayde Ramsey) the aircraft after the incident; (x) two former employees of Regional Air–a pilot who flew the aircraft in question and the Director of Maintenance (Philip Armbrister, Jr. and Austin Brennan); and (xi) other first responders. (DE 89, Def.'s Mot. at 10–12; DE 90, Def.'s Mot. at 10–12.)

Plaintiff responds that Defendants' list of prospective witnesses who reside in the Bahamas is greatly exaggerated and padded to bolster their *forum non conveniens* motions. In support, Plaintiff emphasizes that Defendants only named seven Bahamian individuals (Cerone Ramsey, Elvis Curtis, Gary Rolle, Clint Cox, Tamal Sands, Wayde Ramsey, and Austin Brennan) in their Initial Disclosures dated August 2015 pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. (DE 93–5, Pl.'s Resp. Ex. 5.) Defendants reply that any additional witnesses identified in their Motions to Dismiss dated May 2016 (DE 89, 90) were discovered through written discovery after Defendants had already served their initial disclosures.

Plaintiff has not argued that these additional individuals identified in Defendants' Motions, but not named in their Initial Disclosures, do not have pertinent information. Indeed, based upon his own disclosures and argument, Plaintiff appears to acknowledge that at least Delvin Major, Clint Cox, Wayde Ramsey, Chad Adderley, and Lynden Stephenson Mitchell, all residents of the Bahamas, are likely to have discoverable information. (DE 93, Pl.'s Resp. at 15; DE 93–9, Pl.'s Initial Disclosures.) Further, the now-dismissed Bahamian defendants named eleven Bahamian witnesses in their Initial Disclosures dated August 2015. (DE 93–10, Pl.'s Resp. Ex. 10.) [6]

**6.** While the mere fact that certain individuals were not listed in Defendants' Initial Disclosures is not a valid reason to negate the significance of their testimony, the Court does find that some of the individuals on Defendants' list of proposed witnesses do not appear to be critical witnesses. For example, because the cause of the decedent's death does not appear to be a subject of dispute, the Court questions whether the medical personnel (Gary Rolle, Dennis Dames, Keysha Hanna, and Dr. Condelia Nairn) constitute critical witnesses in this case. Also, it is unclear why the sergeant (Sgt. Colebrook) who collected the decedent's personal effects would have important testimony. Defendants also listed

Based upon the Court's careful review of Defendants' list of proposed witnesses, there are about one dozen witnesses located in the Bahamas, including eyewitnesses to the incident/scene (Clint Cox, Cerone Ramsey), Bahamian police officers (Sgt. Elvis Curtis and Sgt. Penn), Bahamian aviation investigators/inspectors/repairmen (Delvin Major, Philip Romer, Deion Demeritte, Wayde Ramsey), and others as to which Defendants have sufficiently demonstrated that they possess relevant information pertaining to the incident (*e.g.*, Christopher Adderley, Philip Armbrister, Jr., Austin Brennan, Chad Adderley, and Lynden Stephenson Mitchell). *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1331–32 (11th Cir. 2011) ("The family members argue that the manufacturers list these witnesses as a pretext, compiling a laundry list of potential witnesses as a means of defensive forum shopping, but we disagree. The manufacturers might reasonably call Brazilian witnesses in their defense. These witnesses may include eyewitnesses to the crash, government employees in charge of airport safety, TAM employees, investigators .... Because the Southern District of Florida lacks compulsory process for the attendance of [these] unwilling ... witnesses, this factor also favors dismissal." (internal citation and quotation marks omitted)).

Plaintiff too has identified numerous witnesses located in the United States. Specifically, Plaintiff's list of prospective witnesses includes the following: (i) the spouse of the decedent and sole survivor (Lottie Mae Charron); (ii) governmental officials with information pertaining to licenses, exemptions, maintenance, and inspections, and other Federal Aviation Administration ("FAA") or United States Department of Transportation ("US DOT") records (James Jelinski (South Florida), Al Frank (South Florida), Joaquin Ochoa (South Florida), Paul Gretch (Washington D.C.), and Robert Finamore (Washington D.C.)); (iii) the decedent's former employers or co-workers who have knowledge about the decedent's habits, experience, and proficiency as a mechanic (Matthew Amberg, Donald Pieters, Jeffrey Soffer, Robert Courtney, Jeff Klingenberg, and Larry Aitkens (all South Florida residents)); (iv) a tax professional with knowledge of the decedent's wages and taxes (Daniel Santilli (Connecticut)); and (v) an individual with knowledge regarding the maintenance records for the aircraft (Ward Rosadiuk (Arkansas)). In addition, Plaintiff points out that the now-dismissed Bahamian defendants identified in their Initial Disclosures an individual residing in the United States who performed a post-incident inspection on the aircraft (Ricardo Garcia (South Florida)). (DE 93–10, Pl.'s Resp. Ex. 10.)[7]

Looking at the quality and quantity of the proposed witnesses, the Court finds that Clint Cox, as the only eyewitness to the incident, and the several Bahamian investigators/inspectors and eyewitnesses to the scene proposed by Defendants are the most critical witnesses on the issue of negligence and liability. While the FAA and DOT officials and the decedent's former employers and coworkers proposed by

---

about ten first responders but failed to indicate what their testimony might be. Nonetheless, even assuming that these witnesses are not critical, Defendants have still identified numerous other witnesses located in the Bahamas with important testimony.

7. Plaintiff also emphasizes that Defendants have issued eight subpoenas to individuals or entities in the United States, but the significance of any testimonial or documentary evidence from these potential individuals or entities is unclear. Thus, the Court cannot determine whether these individuals or entities are likely to be critical witnesses or supply critical documentary evidence.

Plaintiff may shed some light on liability, their testimony is not as important on the issue of liability as the sole individual who witnessed the landing gear collapse, and the other eyewitnesses and investigators/inspectors located in the Bahamas. The surviving spouse and the tax professional, who are located in the United States and are proposed by Plaintiff, are likely to testify on the issue of damages, not the key issues of negligence and liability.

The Court recognizes that in *Sun Trust Bank v. Sun International Hotels Limited*, 184 F.Supp.2d 1246, 1264 (S.D. Fla. 2001), a wrongful death case arising out of a snorkeling incident at a resort in the Bahamas, this Court held that the defendants' concerns regarding the ease of access to proof in the Bahamas and the availability of compulsory process for attendance of unwilling witnesses located in the Bahamas did not outweigh the plaintiff's choice of forum. However, in *Sun Trust Bank*, a majority of the Bahamian witnesses were employees of the defendants who, defendants admitted, would appear voluntarily, and the defendants had failed to establish the importance of the testimony of the other Bahamian witnesses. *Id.*

 By contrast, in this case, nearly all of the relevant witnesses proposed by Defendants are not employees of Defendants, and Defendants here have demonstrated that the Bahamian witnesses are eyewitnesses that will describe what happened on the tamarac when the incident occurred and immediately after the incident, matters for which live testimony is essential to Defendants' ability to defend the case. *See McLane v. Marriott Int'l, Inc.*, 547 Fed. Appx. 950, 955 (11th Cir. 2013) ("[W]e find no abuse of discretion in the district court's conclusion that the "ease of access" factor strongly favors Marriott. Because key witnesses necessary for the resolution of the critical issue of liability reside in Costa Rica, the district court could weigh this factor against a trial in Florida."); *Montgomery v. Oberti*, 945 F.Supp.2d 1367, 1376 (S.D. Fla. 2013) ("[G]iven the importance of these witnesses in assessing the disputed factual issues, the Court finds that no adequate substitute exists for the witnesses' live testimony and that the lack of access to this testimony weighs very strongly in favor of dismissal."). As stated in *Gulf Oil*, "[c]ertainly to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." 330 U.S. at 511, 67 S.Ct. 839. The Southern District of Florida lacks compulsory process for the attendance of these critical Bahamian witnesses.[8]

Hence, because the Court finds that the majority of the material witnesses in this action are located in the Bahamas, and these witnesses would not be subject to compulsory process if this action were to proceed in this forum, this factor strongly favors dismissal.

2. Cost of Attendance of Witnesses

The cost factor does not heavily weigh in favor or against dismissal. If trial of this action were located in this forum, Defendant would bear the cost of transporting the Bahamian witnesses to Florida. As to Defendants Michael Humphrey and Calvin Humphrey, the cost of traveling to the Bahamas is likely to be similar to the cost of traveling to South Florida. If trial of this action were located in the Bahamas, Plaintiff would bear the cost of transporting his witnesses, many of whom are locat-

---

8. In addition, the Court notes that it is not as likely that Plaintiff would need to obtain compulsory process over the decedent's former employers, coworkers, and tax professional, who, presumably, would be more apt to be willing witnesses than the Bahamian officials.

ed in Florida, to the Bahamas. As to those of Plaintiff's witnesses who are located outside Florida, including Mae Charron (Connecticut); Paul Gretch (Washington D.C.), Robert Finamore (Washington D.C.), Daniel Santilli (Connecticut), and Ward Rosadiuk (Arkansas)), the cost of transporting these witnesses to the Bahamas is likely to be similar to the cost of transporting them to Florida. *Miyoung Son v. Kerzner Int'l Resorts, Inc.*, No. 07-61171-CIV, 2008 WL 4186979, at *9 (S.D. Fla. Sept. 5, 2008) ("Plaintiffs cannot realistically contend that the inconvenience of traveling to Nassau would vary significantly from the inconvenience of traveling to West Palm Beach.") Because Plaintiff is likely to call more U.S. witnesses that are located out-of-state than Defendants, the difference between a Bahamian forum and a U.S. forum is likely to be slightly less costly for Plaintiff.

### 3. Ability to Implead Third–Party

■ The ability of defendants to bring a third-party action against other alleged wrong-doers can be considered a private interest factor within the enumerated consideration of making a trial "easy, expeditious and inexpensive." *Reid–Walen v. Hansen*, 933 F.2d 1390, 1398 (8th Cir. 1991); *Pain v. United Techs. Corp.*, 637 F.2d 775, 790 (D.C. Cir. 1980); *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 453 (2d Cir. 1975). In this case, Plaintiff alleged identical causes of actions against the Execujet Defendants, Aerologistics, and Regional Air, namely, negligence, res ipsa loquitur, and spoliation claims. The allegations against the three entities are also identical. The Amended Complaint alleges that the Execujet Defendants, Aerologistics, and Regional Air each owed a duty to exercise reasonable care in the ownership, operation, maintenance, control and/or use of the aircraft, and each breached that duty. (DE 26, Am. Compl. ¶¶ 87, 99, 111.) Plaintiff alleges that Defendants failed to maintain the aircraft, which caused the aircraft

to collapse on the deceased, allowed it to remain in a dangerous condition, failed to provide the necessary equipment and manpower, failed to provide a safe work environment, and failed to secure the aircraft prior to allowing the decedent work on the aircraft. (*Id.* ¶¶ 89–93, 100–105, 112–117.) Plaintiff alleges that as a result of Defendants' actions, the decedent was killed. Given the overlapping allegations, Defendants assert that they have a critical and viable third-party claim against Regional Air for contribution and indemnity, and breach of contract. Furthermore, because this action was dismissed as to Regional Air due to a lack of personal jurisdiction (DE 85, Order), the Execujet Defendants and Aerologistics would not be able to implead Regional Air in this lawsuit.

In his response, Plaintiff makes two specious arguments. First, Plaintiff argues that Defendants should not be able to rely upon their inability to implead Regional Air in this case because Defendants had nearly a year to file a cross-claim against Regional Air in this case before Regional Air was dismissed from the lawsuit, but failed to do so. However, that argument ignores the fact that this action was dismissed as to Regional Air due to a lack of personal jurisdiction over Regional Air. (*Id.*) Thus, as Defendant argue, the filing of a third-party claim against Regional Air would have been a waste of Defendants' time and resources, as well an unnecessary expenditure of judicial resources.

Second, citing *Sun Trust Bank*, 184 F.Supp.2d at 1264–65, Plaintiff argues that it would not be unduly burdensome for Defendants to pursue a separate indemnification action in the Bahamas. However, in *Sun Trust Bank*, the plaintiff's case and defendants' theory against the third-party did not involve significant duplication of proofs. *Id.* Here, on the other hand, there would be a significant overlap in proofs in

Plaintiff's case and Defendants' potential theory of liability against Regional Air, as indicated by the fact that the claims and the allegations in the Amended Complaint against the three identities are identical. Due to the duplication of proofs and the possibility of inconsistent verdicts, the Court finds the burden to Defendants of pursuing a separate indemnification action against Regional Air to be substantial and to weigh strongly in favor of dismissal.

### 4. Balancing of Private Interests

The Court is mindful of the strong presumption in favor of Plaintiff's chosen forum, especially since Plaintiff is a United States citizen. See *SME Racks, Inc.*, 382 F.3d at 1101. However, the Court agrees with Defendants that they would suffer a manifest material injustice if forced to litigate here because of, among other things, the difficulty in trying to secure the testimony of critical witnesses located in the Bahamas and outside the subpoena power of this Court. Therefore, the Court concludes that the unfairness and undue burden to Defendants of trying the case in this District strongly outweigh Plaintiff's choice of a United States forum. *See Montgomery*, 945 F.Supp.2d at 1376 (finding that private factors weighed in favor of dismissal in personal injury action brought by female resort guest, a United States citizen, against resort operator, a Bahamian company with corporate offices in Florida, and three male resort guests, who were United States citizens, where the most important witnesses in case would be the Bahamian police officers who investigated the alleged rape and the Bahamian doctors and nurses).

### C. Public Interest Factors

Although this Court finds that the private interest factors heavily weigh in favor of dismissal in this case, this Court must still consider the public interest factors in all cases. *SME Racks*, 382 F.3d at 1100

n.5. In *Gulf Oil*, the Supreme Court described the considerations of public interest that district courts should consider on a motion to dismiss for *forum non conveniens*:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839. Additionally, the Court must weigh the interest of the United States in providing a U.S. forum for its citizens with the interest of the Bahamas in adjudicating a dispute that occurred in its territory. *See SME Racks*, 382 F.3d at 1104.

Defendants argue that the public interest factors weigh in favor of dismissal for the following reasons: (1) a jury comprised of residents of Palm Beach County, Florida, should not be burdened with a lawsuit to which they have little connection; (2) the Bahamas has a greater interest in this suit than Florida or the United States in that the injury occurred in the Bahamas and its citizens are likely to be the key witnesses; and (3) Bahamian law would apply. Defendants argue that Florida does not have a connection to this lawsuit because none of the parties (or, at least, the

real parties in interest) to this lawsuit are Florida residents. (DE 89, Def.'s Mot. at 16–17; DE 90, Def.'s Mot. at 16–17.) The real party in interest is the survivor of the victim, Lottie Mae Charron, who resides in the state of Connecticut, and Defendants Execujet and Aerologistics (which are limited liability companies) and Calvin Humphrey are citizens of Texas, and Defendant Michael Humphrey is a citizen of Georgia. (DE 1, Notice of Removal ¶¶ 8–11; DE 26, Compl. ¶ 11.) Defendants also point out that a likely third-party defendant is a Bahamian corporation. (DE 89, Def.'s Mot. at 16; DE 90, Def.'s Mot. at 17.)

Plaintiff insists that the Southern District of Florida has a strong interest in resolving this dispute for the following reasons: (1) while all of Defendants and the only survivor are citizens of states other than Florida, the victim himself was a resident of South Florida; and (2) all Defendants conducted business in this district, including Execujet, which has its principal place of business in Fort Lauderdale. Plaintiff also points out that the subject aircraft was serviced at times in Florida and was flown to and from Florida around the time of the incident. (DE 93, Pl.'s Resp. at 19–20.)

 As further discussed below, while the Court begins with the proposition that Plaintiff (a U.S. citizen) should not be ousted from a U.S. forum, the Court finds that the public interest factors weigh in favor of trial in the Bahamas.

### 1. Court Congestion

Regarding court congestion, the Court has previously recognized that while this District has one of the busiest dockets in the United States, the court congestion factor is afforded little or no weight in the *forum non conveniens* analysis. *See Karl v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 13-24051-CIV, 2014 WL 11906608, at *6 (S.D. Fla. Feb. 21, 2014).

### 2. Burden on Jury/Local Interest

With regard to jury imposition, this Court agrees with Defendants that given the nature of this case–a wrongful death action brought for the benefit of a Connecticut survivor against four defendants, all of whom are citizens of states other than Florida, involving a Florida decedent who died in the Bahamas after the landing gear from the aircraft he was servicing collapsed on him at a Bahamas airport–the local community has little relation to the litigation.

The Court recognizes that in *Sun Trust Bank,* which is cited by Plaintiff, this Court rejected the defendants' position there that jurors of this forum would be unfairly burdened by the trial of an action involving a Florida resident who died in the Bahamas. In that case, however, the accident occurred in the swimming lagoon of Atlantis Resort, "an international resort marketed heavily to Floridians, where Florida residents vacation on a regular basis." 184 F.Supp.2d at 1266. The facts of this case cannot reasonably be analogized to the facts in *Sun Trust Bank*. Here, in contrast, there is no indication that Defendants' aviation-related maintenance services would capture the same level of interest that a Bahamian resort frequented by Florida residents would.

Although Plaintiff emphasizes that the subject aircraft flew to and from Florida 17 times during the span of more than one year (DE 93, Pl.'s Resp. at 19), the subject of the lawsuit is Defendants' maintenance services. Plaintiff has not shown how the aircraft's flight history in Florida supplies a nexus between the negligence claims in the lawsuit and the local forum. Likewise, while Plaintiff underscores that Defendants conducted business, and serviced the subject aircraft at times, in Florida, "there are no allegations connecting any such maintenance to the negligence that alleg-

edly caused the accident in the Bahamas." (DE 85, Court's Order on Personal Jurisdiction at 10.) *Fontaine v. Signature Research, Inc.*, No. 1:14-CV-24028, 2016 WL 880527, at *9 (S.D. Fla. Mar. 8, 2016) (finding that the local jury should not be burdened with a lawsuit where "[t]he incident took place in the Dominican Republic, [p]laintiffs are Michigan residents, and [d]efendant Signature is a Georgia citizen. The connections to Florida ... are entirely tangential and unrelated to [p]laintiffs' remaining claims.").

In summary, all of the parties/real parties in interest are located in states other than Florida, the accident and the injuries occurred in the Bahamas, and the key witnesses are located in the Bahamas. For these reasons, the Court finds that jury duty is not a burden that ought to be imposed upon the people of this community, and there is an insufficient local interest in having this controversy decided in this forum.

### 3. Sovereigns' Interests

The Court finds that the Bahamas has a greater interest in adjudicating this lawsuit than does the United States. "The United States undoubtedly has an interest in allowing its citizens to seek redress for alleged tortious conduct committed by other United States citizens." *Montgomery v. Oberti*, 945 F.Supp.2d 1367, 1377 (S.D. Fla. 2013). The United States also has a general interest in monitoring the activities of domestic businesses and ensuring the safety of its citizens and entities abroad. However, the Bahamas has a demonstrated interest in adjudicating a matter concerning proper aircraft maintenance and services undertaken by foreign entities and individuals at the Bahamas airport. Proper aircraft maintenance affects the safety of those residing, visiting, and transacting business in the Bahamas. The fatal incident is the subject of investigations that were undertaken by the Bahamian police

and the Bahamas civil aviation department. (DE 89, Def.'s Mot at 12–13; DE 90, Def.'s Mot. at 13.) The written statement of the only eyewitness to the incident continues to remain in the sole custody of the Royal Bahamas Police Force. (*Id.*) It is clear that the Bahamas has a substantial interest in providing a remedy to individuals who suffer injuries at its airport due to improper aircraft maintenance. *Karl v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 13-24051-CIV, 2014 WL 11906608, at *6 (S.D. Fla. Feb. 21, 2014) ("[T]he Bahamas has a greater local interest in adjudicating the safety of its [r]esorts .... than does the United States.")

Moreover, the Bahamas has a substantial interest in "having Bahamian courts pass on tortious conduct that occurs entirely inside the Bahamas." *Id.* In *SME Racks*, the court made clear that the "United States has a strong interest in providing a forum for its citizens' grievances against an allegedly predatory foreign business that actively solicited business and caused harm *within the home forum*." 382 F.3d at 1104 (emphasis added). In *SME Racks*, a U.S. plaintiff claimed it received a shipment of defective goods in Florida. *Id.* This case is distinguishable from *SME Racks*, because the "harm" did not occur in the United States. Instead, Plaintiffs are suing for conduct which occurred entirely within the Bahamas. The Bahamas has a "significant interest in deciding a controversy arising from occurrences on its own soil." *Goldstein v. Hard Rock Café Int'l (USA), Inc.*, 519 Fed.Appx. 653, 655 (11th Cir. 2013); *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 Fed.Appx. 962, 967 (11th Cir. 2014) ("[T]he Bahamas has a strong interest in the case, which involves the safety of one of the Bahamas's tourist attractions. The facts that the Pappases are American citizens (albeit of New Jersey, not Florida) and that Kerzner is headquartered within the

Southern District of Florida do not overcome the Bahamas undisputed strong interest in the case."); *Ericson v. Wyndham Worldwide Corp.*, No. 12-20103-CIV, 2014 WL 11822749, at *6 (S.D. Fla. Feb. 28, 2014) ("The incident and injury at issue occurred ... in the Bahamas. The Bahamas, therefore, has a substantial interest in providing its vacationers and tourists with a remedy for any injuries they may suffer.").

Hence, while the United States and the Bahamas both have an interest in providing a forum for Plaintiff's grievance, the Court finds that the interest of the Bahamas in adjudicating a matter concerning aircraft safety and occurring entirely within the Bahamas is more significant.

### 4. Governing Law

The parties agree that Bahamian law will most likely govern this dispute. While this Court is capable of applying Bahamian law, and the Bahamas is a common law country much like our own, the Court would be forced to rely on expert testimony and evidence provided by the parties as to the substance of Bahamian law, which would add to the administrative burden of having trial in this forum. *See Miyoung Son v. Kerzner Int'l Resorts, Inc.*, No. 07-61171-CIV, 2008 WL 4186979, at *11 (S.D. Fla. Sept. 5, 2008)

### 5. Balancing of Public Interest Factors

Both the United States and the Bahamas have an interest in providing a forum for this case, but the interest of the Bahamas in adjudicating an aviation-related dispute occurring entirely on Bahamian soil, is more significant. Given the likelihood that the law of the Bahamas will apply in this action, and upon consideration of the rest of the relevant public interest factors, including the substantial relationship of the case to the Bahamas, the Court concludes that the public interest factors weigh in favor of dismissal.

### D. Reinstatement of Suit

The Court must ultimately determine whether Plaintiff can reinstate his lawsuit in the alternative forum without undue prejudice or inconvenience. *See Léon*, 251 F.3d at 1310–11. The inconvenience to the surviving spouse and sole survivor, Lottie Mae Charron, of traveling from Connecticut to West Palm Beach, Florida, is similar to the inconvenience of traveling from Connecticut to Nassau, Bahamas. The distance between these locations is nearly the same. Furthermore, there are several other out-of-state witnesses who will need to travel whether the lawsuit proceeds in this forum or the Bahamas. For the Florida-based witnesses, the cost and inconvenience of travel from Florida to nearby Bahamas is not likely to be unduly prohibitive. In addition, Plaintiff will not be prejudiced by dismissal, as Defendants have agreed to be subject to the jurisdiction of Bahamian courts. Defendants have also agreed to waive any statute of limitations defenses they might have under Bahamian law. The Court, therefore, dismisses this action subject to these representations.

## IV. CONCLUSION

Based upon the foregoing, the Court concludes that this action shall be dismissed based upon *forum non conveniens* grounds. The Court is thoroughly convinced that positive evidence of unusually extreme circumstances exist, and that material injustice is manifest, sufficient to dismiss this action in favor of the Bahamian forum.

It is hereby **ORDERED AND ADJUDGED** that the Defendants' Motion to Dismiss (DE 89, 90) is **GRANTED.** The Defendants are deemed to have waived any statute of limitations and personal jurisdiction defenses they might otherwise raise in the Supreme Court of the Bahamas. This case is **DISMISSED WITH-**

OUT PREJUDICE for Plaintiff to refile in the Supreme Court of the Bahamas. The Clerk shall **CLOSE** this case, and any pending motions are **DENIED** as moot.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida, this day of March 12, 2017.