[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-12806

————————————————

D. C. Docket No. 0:17-cv-60027-UU

PETER J. NYGÅRD, NYGÅRD INTERNATIONAL PARTNERSHIP,  and
NYGÅRD, INC.,

Plaintiffs – Appellants,

versus

JOHN J. DIPAOLO and THE D&R AGENCY, LLC,

Defendants – Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(October 10, 2018)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and HALL,[*] District
Judge.

HALL, District Judge:

---

[*] Honorable J. Randal Hall, United States District Judge for the Southern District of
Georgia, sitting by designation.

Plaintiffs appeal the district court's decision granting Defendants' motion to dismiss.  The question on appeal is whether the district court abused its discretion by dismissing this case on *forum non conveniens* grounds.  Having reviewed the record and the parties' briefs, we affirm.

## I.  BACKGROUND

Plaintiff Peter J. Nygård is a Canadian citizen residing in the Bahamas who owns Plaintiffs Nygård, Inc., a Delaware corporation with its primary headquarters in New York, New York, and Nygård International Partnership, a Canadian business.    Plaintiffs design women's clothing which they sell throughout the United States.

The facts of this case largely surround a series of lawsuits that were initiated by and against Mr. Nygård.  The first action was filed on March 9, 2016, in the Supreme Court of the Commonwealth of the Bahamas (the "Harassment Action"). The Harassment Action plaintiffs are Bahamian environmentalists, including Louis Bacon, Frederick Smith, and C.B. Moss, who claim that they were attacked by Mr. Nygård and his agents after the plaintiffs protested Mr. Nygård's development of his Bahamian residence, Nygård Cay.  Those attacks allegedly came in the form of acts of violence, such as: (1) attacking Mr. Smith in April 2013; (2) fire-bombing

2

Mr. Moss's car in July 2013;  and (3) plotting to murder Messrs. Smith and Bacon in February 2014.

In response to the Harassment Action, Mr. Nygård filed a separate lawsuit in the Bahamas on March 29, 2016 (the "Conspiracy Action"), alleging that the Harassment Action plaintiffs, among others, conspired to collect and file perjured testimony in the form of an affidavit that was prepared by Defendant John J. DiPaolo, a private investigator in Florida, and his investigative firm, Defendant the D&R Agency, LLC ("D&R") (the "DiPaolo Affidavit").[1]

On January 16, 2015, Mr. Bacon, who is a plaintiff in the Harassment Action and a defendant in the Conspiracy Action, filed a lawsuit against Mr. Nygård for defamation in the Supreme Court of New York County, New York (the "New York Action").  Mr. Bacon asserted that he was the victim of a smear campaign in the Bahamas that was allegedly orchestrated by Mr. Nygård.  On August 10, 2016, the New York Supreme Court dismissed the New York Action on *forum non conveniens* grounds, finding that the Bahamas was a more suitable forum.  That order was subsequently reversed, however.  See Bacon v. Nygard, 160 A.D.3d 565 (N.Y. App. Div. 2018).

In the present action, Plaintiffs allege that Mr. Bacon, who is not named as a defendant, hired Mr. DiPaolo and D&R, to find witnesses to provide perjured

---

[1] Mr. Nygård did not name Mr. DiPaolo or D&R as defendants in the Conspiracy Action.

testimony that could be used in the Harassment and New York Actions. Defendants in turn hired Livingston Bullard and Wisler Davilma, two Bahamian criminals, to make sensational statements that Mr. Nygård had engaged in criminal activities throughout the Bahamas.    For example, Messrs. Bullard and Davilma testified that Mr. Nygård "prepared a hit list to murder persons . . . [and] paid Messrs. Bullard and Davilma to burn down a shop and automobile." These statements were used as a foundation for the DiPaolo Affidavit which was then filed in the New York and Harassment Actions.  Messrs. Bullard and Davilma subsequently recanted their statements and told Plaintiffs' attorneys that they were hired by Mr. DiPaolo to make false statements against Mr. Nygård.[2]

In addition to the false statements, Plaintiffs allege that Mr. Bacon hired Tazhmoye Lacy-Ann Cummings, Samantha Storr, and Philincia Cleare to extort funds from Plaintiffs.  The three allegedly threatened to participate in Mr. Bacon and Defendants' criminal enterprise if they were not each paid between $500,000 and $800,000.

Plaintiffs claim that they have suffered serious financial harm due to Defendants' criminal enterprise.  In addition to the litigation costs incurred through the Harassment and New York Actions, Plaintiffs claim that Defendants have damaged Plaintiffs' reputation throughout the United States.  The damage to

---

[2] Despite this recantation, Messrs. Bullard and Smith later gave additional statements to Defendants.

Plaintiffs' reputation led to the loss of a longtime lending partner who severed ties with Plaintiffs, citing the negative media coverage surrounding the allegations against Mr. Nygård in the Harassment Action.

Plaintiffs initiated this action on January 5, 2017, in the United States District Court for the Southern District of Florida, alleging that Defendants have engaged in a criminal enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962, *et seq.*, with the purpose of spreading false information about Plaintiffs. Defendants subsequently moved to dismiss Plaintiffs' complaint for *forum non conveniens*, or, in the alternative, for the district court to abstain from hearing this matter while the Harassment and Conspiracy Actions proceed. The district court found that because Defendants agreed to submit themselves to the jurisdiction of the Bahamas, the Bahamas was an adequate alternative forum. The district court then balanced the private and public interest factors and concluded that those factors weighed in favor of dismissal. The district court finally concluded that Plaintiffs would be able to reinstate their complaint in the Bahamas without undue prejudice or inconvenience. Accordingly, on May 22, 2017, the district court granted Defendants' motion to dismiss on *forum non conveniens* grounds. Plaintiffs appeal the district court's order.

5

## II.  STANDARD OF REVIEW

"The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference."  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981).  Abuse of discretion is "extremely limited" and "highly deferential." Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1288 (11th Cir. 2009).  "Thus, when employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."  United States v. Frazier, 387 F.3d 1244, 1259 (11th Cir. 2004).  Notably, "the abuse of discretion standard of review recognizes that for the matter in question there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make."  McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir.  2001).

## III.  DISCUSSION

In this appeal, Plaintiffs argue that the district court erred by refusing to allow them to engage in additional discovery, failing to afford substantial

6

deference to their choice of forum, and adopting an overly narrow interpretation of their complaint.  Plaintiffs contend that these errors skewed the district court's balance of the private and public interest factors in its *forum non conveniens* analysis.

## A.  Discovery

Plaintiffs complain that they were not given sufficient opportunity to engage in discovery to develop their claims.  Specifically, Plaintiffs insist that additional discovery was needed to reveal information about potential witnesses in the United States, including the location of Defendants' alleged California confederates, who Plaintiffs now claim include private investigators that were tasked with carrying out Defendants' criminal enterprise.[3]    We review the district court's denial of discovery for abuse of discretion.  White v. Coca–Cola Co., 542 F.3d 848, 853 (11th Cir. 2008).

When a motion to dismiss is not confined to the face of the pleadings, the parties are sometimes allowed to engage in limited discovery.  See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 n.13 (1978) (finding that discovery was appropriate "where issues arise as to jurisdiction or venue."); Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729 (11th Cir. 1982) ("We have held that such jurisdictional discovery is not entirely discretionary, and this appears to be the

---

[3] This allegation appears nowhere in Plaintiffs' complaint.

better view."). Nevertheless, "[s]uch discovery requests should not serve as fishing expeditions," and are therefore only appropriate when a party demonstrates that it can supplement its allegations through discovery. Wolf v. Celebrity Cruises, Inc., 683 F. App'x 786, 792 (11th Cir. 2017) (affirming denial of jurisdictional discovery where request did not specify the information sought or explain how it would "bolster" jurisdictional allegations). Additionally, if there is a pending motion, a party must take reasonable efforts to warn the district court that more discovery is needed before that motion can be resolved. See United Tech. Corp. v. Mazer, 556 F.3d 1260, 1280–81 (11th Cir. 2009) (affirming dismissal where plaintiff "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs . . . .").

In the instant case, Plaintiffs contend that they served discovery regarding "critical facts" related to *forum non conveniens* on March 28, 2017, about ten days before Defendants filed their motion to dismiss and two months before the district court entered its order. If Plaintiffs believed Defendants had evidence that was critical to deciding the *forum non conveniens* issue, it was incumbent upon them to notify the district court about the evidence they sought and its potential impact on deciding Defendants' motion. Yet, beyond a vague reference that there might be witnesses located in California, which was buried in a footnote in Plaintiffs' response in opposition to Defendants' motion to dismiss, Plaintiffs failed to take

8

such action.  "The district court, therefore, did not so much deny discovery as it dismissed the case before discovery was taken. We cannot say that the district court erred," Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.7 (11th Cir. 1999), much less abused its discretion.

## B.  Deference to Plaintiffs' Choice of Forum

Moving on to the district court's analysis of the *forum non conveniens* issue, Plaintiffs contend that the district court failed to afford substantial deference to their choice of forum when it balanced the private interest factors.  When a plaintiff sues in his home forum, "it is reasonable to assume that this choice is convenient."  Piper Aircraft, 454 U.S. at 255-56.  To overcome the presumption against disturbing the plaintiff's choice of forum, this Circuit has long mandated that district courts must find "positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country."  La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983) (alterations adopted and internal quotation marks omitted).  When the plaintiff sues in a foreign venue, on the other hand, the assumption of convenience is much less reasonable.  Piper Aircraft, 454 U.S. at 256.  Therefore, a foreign plaintiff's choice of forum deserves less deference.  La Seguridad, 707 F.2d at 1307.

9

The district court decided that because Plaintiffs, one of which is a United States corporation, were foreign to Florida, their choice of forum was entitled to less deference. Yet, to determine whether a party is suing in his home forum, federal courts focus on the plaintiff's country of origin, not the state in which he resides. Kostelac v. Allianz Global Corp. & Specialty AG, 517 F. App'x 670, 673-74 (11th Cir. 2013) ("When a United States citizen sues in a United States District Court, he is suing in his home forum."); Aldana, 578 F.3d at1293 ("[T]he relevant forum for purposes of the federal [*forum non conveniens*] analysis is the United States as a whole."). Because the district court based its decision on Plaintiffs' out-of-state residence, we cannot support its finding that Plaintiffs' choice of forum was entitled to less deference.

Nevertheless, the district court subsequently explained that "even if Plaintiffs were entitled to substantial deference, the Court would still dismiss this case on *forum non conveniens* grounds for reasons set forth herein." Plaintiffs contend that the district court merely referenced the correct standard and did not apply substantial deference to Plaintiffs' choice of forum in its analysis. We cannot say that such an error warrants reversal under the facts of this case. In cases where we have reversed the district court for failing to give substantial deference to the plaintiff's choice of forum, the district court failed to even apply a weak presumption in its analysis. SME Racks, Inc. v. Sistemas Mecanicos Para

10

Electronica, S.A., 382 F.3d 1097, 1103 n.9 (11th Cir. 2004) ("The presumption in favor of the plaintiff simply was not applied."); McLane v. Los Suenos Marriott Ocean & Golf Resort, 476 F. App'x 831, 833 n.2, 833-34 (11th Cir. 2012) ("The district court mentioned the presumption against disturbing the plaintiffs' forum choice in its introduction to the order, but failed to mention the presumption at all in its application and balancing of the factors."). In SME Racks, for example, the district court dismissed a complaint brought by a United States citizen on *forum non conveniens* grounds despite finding that the private interest factors were "at or near equipoise." SME Racks, 382 F.3d at 1102. We reversed, reasoning in part that there was no:

> basis to speculate that the district court simply failed to mention the presumption in its application section, but nevertheless considered the presumption and determined that the presumption was defeated. If any presumption exists in favor of the plaintiffs' choice . . . then by definition the plaintiffs' choice must win if all other factors are equal.

Id. at 1103.

In this case, unlike SME Racks or McLane, the district court at least applied a weak presumption when it balanced the private interest factors. Nygård v. DiPaolo, 2017 WL 4303825, at *12 (S.D. Fla. May 22, 2017) ("[W]hile the Court accords Plaintiffs' choice some deference, the overall balance [of the private interest factors] tips toward the Bahamas."). Thus, we are not left to speculate as to whether a stronger presumption would have altered the district court's analysis.

11

Cf. McLane, 476 F. App'x at 834 ("Because it is unclear whether the district court, applying the presumption correctly, would conclude that dismissal is nevertheless appropriate, we reverse and remand for reconsideration."). Because the district court gave some deference to Plaintiffs' choice of forum and made clear that additional deference would not change its analysis, reversal is inappropriate.

## C. Private Interest Factors

The district court proceeded to balance the private interest factors and found those factors weighed in favor of dismissal. Private interest factors "pertain to the interests of the participants in the litigation." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1331 (11th Cir. 2011). The Supreme Court has provided a list of factors that courts should consider when deciding a *forum non conveniens* issue, including:

> [R]elative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Piper Aircraft, 454 U.S. at 241 n.6 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

### 1. Relative Ease of Access to Sources of Proof and Availability of Compulsory Process

The record supports the district court's decision that access to sources of proof "weighs strongly in favor of dismissal." Plaintiffs complain that the district

court adopted an overly narrow construction of their complaint and consequently gave little weight to witnesses who reside in the United States. Plaintiffs insist that according to their theory of the case, the Bahamas is only one part of a larger criminal enterprise that was primarily located in New York and Florida. Yet, the district court reasonably found that much of Defendants' alleged misconduct took place in or was at least directed toward the Bahamas. The Bahamas is where Defendants met and hired Messrs. Wisler and Davilma, who are both Bahamian residents, who provided the statements for the DiPaolo Affidavit. Additionally, the Bahamas is home to other potentially relevant witnesses, including Neil Hartnell, who made an allegedly false statement that was used in the DiPaolo Affidavit, and Messrs. Smith and Moss, who are both plaintiffs in the Harassment Action. [4]

Furthermore, although the district court may have mischaracterized the scope of Plaintiffs' complaint, it did consider the importance of witnesses in the United States, including Defendants, Defendants' employees, Mr. Bacon, Mr.

---

[4] Plaintiffs take issue with the district court's conclusion that Messrs. Hartnell, Smith, and Moss were potentially relevant witnesses. Plaintiffs claim that because Messrs. Hartnell, Smith, and Moss did not attempt to influence any witnesses against Plaintiffs, they have no valuable information. However, Messrs. Smith, Hartnell, and Moss all claim to be victims of an alleged campaign of violence that Plaintiffs insist was the fabrication of Defendants' criminal enterprise. At the very least, their testimony appears valuable to Defendants' ability to rebut Plaintiffs' claims. See Tazoe, 631 F.3d at 1332 ("Our analysis must contemplate more than [Plaintiffs'] theories of liability; we must also consider [Defendants'] theories.").

13

Bacon's lawyers, Jack Palladino, and Sarah Ness.[5]    Defendants, however, have made clear that they are willing to travel to the Bahamas.  Likewise, Mr. Bacon is currently engaged in litigation against Mr. Nygård in a Bahamian court.  The district court reasonably concluded that these witnesses would be available in the Bahamas and therefore were afforded less weight when balancing the consequences of trying this case in the Bahamas as opposed to the United States. As for Mr. Palladino and Ms. Ness, who Plaintiffs claim are California investigators hired by Defendants, Plaintiffs failed to identify these witnesses in their complaint or briefing in response to Defendants' motion to dismiss.  While these names were included in Plaintiffs' initial disclosure, it is not the district court's duty to speculate about the relevance of unidentified evidence.[6]   Thus, the only witnesses in the United States who were entitled to much weight, for the purposes of *forum non conveniens*, are Mr. Bacon's lawyers in New York. Comparing Mr. Bacon's lawyers to the witnesses located in the Bahamas, we cannot conclude that the district court abused its discretion by finding that the Bahamas offers superior access to sources of proof.

With the exception of Defendants, who are willing to appear in the Bahamas, the Southern District of Florida lacks the authority to compel the

---

[5] Plaintiffs have not challenged the district court's finding that Defendants' employees should not be "accord[ed] great weight."  When an appellant fails to argue an issue, that issue is abandoned.  United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998).

[6] This reasoning is equally applicable to Ms. Patricia Scandariato, a court reporter who recorded the statements made by Mr. Bullard in Miami, Florida.

14

presence of most of the witnesses in this case.  Mr. Bacon and his lawyers both reside outside of Florida and the 100 mile bulge prescribed by Federal Rule of Civil Procedure 45(c) as do all of the Bahamian witnesses.  Therefore, none of these witnesses are subject to the district court's compulsory process.  Plaintiffs protest that any valuable information these witnesses have can be obtained through depositions or interrogatories.  As an initial matter, we note the strong preference for live testimony where, as here, fraud and subjective intent are elements of the claim.  See Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 952 (1st Cir. 1991).  The availability of compulsory process is especially important to secure the attendance of Messrs. Bullard and Davilma, who Plaintiffs allege were instrumental to Defendants' criminal enterprise.  Messrs. Bullard and Davilma have apparently recanted their testimony at least two times before Plaintiffs initiated this action.  Demeanor evidence will therefore be invaluable in assessing Messrs. Bullard and Davilma's credibility.  Under these facts, depositions and written answers to interrogatories would be a poor substitute for live testimony.  Because live testimony will be essential to both parties and the Southern District of Florida lacks a compulsory process to guarantee the attendance of many of the witnesses in this case, this factor also favors dismissal.[7]

---

[7] Plaintiffs also take issue with the district court's finding that "[o]ther undiscovered percipient witnesses to Nygård's and his agents' misconduct . . . are also likely to be in the Bahamas."  We agree that this was an error. Because Defendants' enterprise was operated out of Florida and

15

## 2. *Cost of Procuring Willing Witnesses*

The district court also found that the parties would save considerable sums by obtaining testimony from Bahamian witnesses in the Bahamas rather than requiring those witnesses to fly to the United States. Plaintiffs contend that the district court erred by considering this factor because Defendants did not submit evidence regarding travel costs. We find no error in the district court's common sense finding that forcing Bahamian witnesses to travel to the United States would impose a cost that could otherwise be avoided if this dispute is litigated in the Bahamas.

Plaintiffs also claim that the district court was required to consider the cost of requiring witnesses in the United States to travel to the Bahamas as opposed to Florida. The district court did, however, acknowledge that Plaintiffs did not identify any witnesses, besides Defendants, who reside in Florida. Requiring the witnesses in the United States, who are mostly residents of New York, to attend trial in the Bahamas would not impose a substantially greater burden than requiring them to travel to Florida. See Goldstein v. Hard Rock Cafe Int'l (USA), Inc., 519 F. App'x 653, 655 (11th Cir. 2013) (affirming district court's conclusion that there was little difference in travel costs by making witnesses fly from New Jersey to

New York, it seems just as likely that undiscovered witnesses might be revealed in the United States. Nevertheless, even ignoring the possibility of undiscovered Bahamian witnesses, for the reasons stated above, we still cannot find that the district court abused its discretion when it concluded that compulsory process weighs in favor of dismissal.

16

Florida as opposed to New Jersey to the Dominican Republic). Accordingly, comparing the cost of flying Bahamian witnesses to the United States to the cost of flying witnesses from New York to the Bahamas, as opposed to Florida, the district court's finding that cost of attendance weighs in favor of dismissal was not a clear abuse of discretion.

### 3. Possibility of Viewing the Premises

The district court briefly considered the value of viewing the premises. It found that the possibility of viewing the premises where Defendants' alleged criminal enterprise engaged in misconduct could be valuable but it did not accord this factor much weight. Plaintiffs maintain that according any weight to this factor was an error because this "is not a tort case where the layout of a particular area may be relevant." Given that the misconduct in this case involved allegations of violence and at least two incidents of property damage, we cannot find that there is zero chance that a view of the premises will be helpful in trying this case. The misconduct that occurred in the United States, by comparison, mostly involved phone calls, bank transfers, court filings, and witness statements, which can most easily be proven by documentary evidence and testimony and would therefore not be helped by a view of the premises. We discern no abuse of discretion in affording some weight to this factor in favor of dismissal.

17

*4. Additional Factors*

In addition to the non-exhaustive list of private interest factors identified by the Supreme Court, courts are "free to consider any number of other practical problems that make trial of a case in a particular forum an undue burden upon either party." Aldana, 578 F.3d at 1302. Here, the district court found that judicial economy, the risk of inconsistent results, and the cost of domesticating a Bahamian judgment were all practical problems that further complicated trying this case in the United States.

Regarding judicial economy, the district court found that the existence of parallel proceedings in the Bahamas weighs in favor of dismissal. As previously mentioned, in the Conspiracy Action, Mr. Nygård alleges that Mr. Bacon, with help from Defendants, conspired to file perjured information in the Harassment Action. Though we accept that Plaintiffs' allegations in this case are not limited to filings in the Harassment Action, Defendants' role in the Conspiracy Action is strikingly similar to its role in the present case. Plaintiffs insist that the existence of parallel litigation is not a relevant factor in a *forum non conveniens* analysis. Yet we have previously found that concurrent litigation can be a practical problem that is properly considered when balancing the private interest factors. See King v. Cesna Aircraft Co., 562 F.3d 1374, 1384 (11th Cir. 2009) (affirming district court's finding "that some Plaintiffs have already litigated and continue to litigate a

18

similar suit in Italy" weighed in favor of dismissal); see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 424 (2007) (describing the case as "a textbook case for immediate *forum non conveniens dismissal*," where litigation was already pending in China).  If this case is allowed to proceed in the Bahamas, Defendants can attempt to consolidate these matters, saving time and resources for both parties.   See RULES OF THE SUPREME COURT OF THE BAHAMAS, OR. 4, R. 1. Such a consideration conforms to the overarching purpose of the *forum non conveniens* doctrine.

The district court also found that allowing this case to proceed in the United States would create the possibility of inconsistent results, as the Bahamian court would eventually address the veracity of the DiPaolo Affidavit in the Conspiracy Action.  Again, Plaintiffs complain that their case is not limited to the DiPaolo Affidavit and does not require proving that Defendants facilitated perjury. However, one of the two predicate offenses in Plaintiffs' RICO claim is 18 U.S.C. § 1956, a money laundering statute wherein Plaintiffs must demonstrate that Defendants violated Bahamian law.  According to Plaintiffs' complaint, one of the laws that Defendants allegedly violated is Bahamian Penal Code Chpt. 84, Title xxvii, §§ 423, 424, which is a perjury statute.  Although an inconsistent ruling is not a foregone conclusion, there is a risk that a United States and Bahamian court will reach opposite results on whether statements made in the DiPaolo Affidavit

19

were actually false. Given the inconvenience to Plaintiffs of having to abide by inconsistent rulings, this factor may not be critical but it was not unreasonable to afford it some weight.[8]

Finally, the district court decided that the cost of domesticating a judgment also weighed in favor of dismissal because the Florida Enforcement of Foreign Judgments Act, Florida Statute ("FEFJA") §§ 55.601-607, provides a convenient mechanism for enforcing foreign judgments against Florida residents. According to the FEFJA, once a plaintiff records a foreign judgment "in the office of the clerk of the circuit court of any county [in Florida]," it has the same effect as a judgment issued by a Florida court. See FLA. STAT. 55.503(1). Plaintiffs claim that the district court conflated the ability to enforce a judgment with the inconvenience of having to do so. Though we agree that inconvenience of domesticating a judgment, which would be unnecessary if this case was tried in the United States, should have weighed against dismissal, this factor does not require reversal because the inconvenience to Plaintiffs is minimal.

As explained above, the district court considered all of the relevant private interest factors and found that they weighed in favor of dismissal. We do not find

---

[8] Plaintiffs also object to the district court's consideration of an injunction allegedly filed in the Harassment Action, demanding that Mr. Nygård abandon his claims in the present case. Plaintiffs complain that considering such actions could incentivize frivolous foreign filings. While we sympathize with Plaintiffs' concerns, we cannot find that it was an abuse of discretion to at least give some weight to the possibility that Mr. Nygård might be enjoined from continuing to participate in this case.

20

that the district court's ultimate conclusion is unreasonable.  This is not to say that conclusion was the only reasonable one, or that another court could not have found the United States was the appropriate forum.  Instead, we only find that, with the exception of the inconvenience of having to domesticate a foreign judgment, the district court could reasonably find that the private interest factors in this case weigh in favor of dismissal, even after assigning substantial deference to Plaintiffs' choice of forum.

## D.  Public Interest Factors

The district court proceeded to balance the public interest factors and found that most of these factors also weighed in favor of dismissal.  Public interest factors "pertain to the relative interests of the two fora."  Tazoe, 631 F.3d at 1333.  The public interest factors identified by the Supreme Court include:

> [T]he administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft, 454 U.S. at 240 n.6 (internal quotation marks omitted).

Regarding court congestion, the district court found that the docket congestion of the Southern District of Florida favored dismissal.  The district court did not, however, consider the docket congestion of the Supreme Court of the

21

Commonwealth of the Bahamas.  Docket congestion considers the relative speed at which a case will be resolved and therefore necessarily requires a comparison. See, e.g., Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 428 (1st Cir. 1991) (directing "a comparative determination of where the case can most quickly be resolved, rather than simply rely[ing] on the state of [the district court's] own docket."); Gates v. Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984) (same).  Accordingly, even though the district court did not accord this factor much weight, we cannot support its conclusion that the administrative difficulties flowing from docket congestion support dismissing this case.

Moving on to the second factor, the district court also concluded that the Bahamian interest in this case was greater than the United States without considering the "strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit."  See Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1311 (11th Cir. 2002). Additionally, the district court reasoned that the Bahamian interest in this case was paramount because Plaintiffs' allegations involve a fraud on the Bahamian court in the form of the DiPaolo Affidavit.  This conclusion ignores that the DiPaolo Affidavit was also filed in the New York Action, giving the United States an equal interest in deciding this case.  Thus, we cannot find that the local interest in this case weighs in favor of the Bahamas.

Despite the district court's erroneous findings with respect to the first and second public interest factors, we nevertheless find that the district court's conclusion that the public interest factors weigh in favor of dismissal was not an abuse of discretion.  Although the district court did not consider judicial economy in its analysis of the public interest factors, the possibility of avoiding duplicative litigation is a cognizable interest, distinct from the convenience to the parties, which weighs in favor of dismissal.  In re: Howmedica Osteonics Corp., 867 F.3d 390, 402 n.7 (3d Cir. 2017) ("[W]e clarify that practical problems that make trial of a case easy, expeditious, and inexpensive represent a private interest, as the Supreme Court stated in Atlantic Marine [Constr. Co. v. U.S. Dist. Ct., 571 U.S. 49 (2013)] and as we have often stated in the forum non conveniens context, . . . we acknowledge judicial economy considerations to be a distinct, cognizable public interest." (citations omitted)); see also Am. Family Life Assur. Co. v. Blue Cross of Fla., Inc., 486 F.2d 225, 228 (5th Cir. 1973) ("[A] judgment which is correct in ultimate effect will not be disturbed on appeal even if the lower court relied on the wrong ground or gave an untenable reason for its decision[.]").  Likewise, we have previously recognized that the possibility of inconsistent rulings with foreign countries raises international comity concerns that should be considered in the *forum non conveniens* analysis.  See Esfeld, 289 F.3d at 1312.  As previously explained, allowing this case to proceed in the United States creates a risk of an

23

inconsistent outcome with the Conspiracy Action in the Bahamas. Hence, though the district court's analysis was problematic, its ultimate conclusion that the public interest factors in this case favor dismissal was not an abuse of discretion.

## IV.  CONCLUSION

For the reasons set forth above, we must affirm the district court's decision to dismiss this case for *forum non conveniens*. Though the district court made mistakes in its analysis of the private and public interest factors, the cumulative effect of those errors does not rise to the level of an abuse of discretion. Accordingly, the district court's order is **AFFIRMED**.

MARTIN, Circuit Judge, dissenting:

I respectfully dissent from the Majority's decision to affirm the District Court's dismissal of the plaintiffs' case on grounds of forum non conveniens. This federal law suit was brought by three plaintiffs, one a U.S. citizen, against two defendants, both of whom appear to be U.S. citizens as well.[1] Yet in denying plaintiffs access to their chosen venue of the U.S. federal courts, the District Judge dismissed the plaintiffs' lawsuit under the discretionary doctrine of forum non conveniens. The Majority acknowledges that the District Court made errors in reaching its decision. Maj. Op. at 24. Under this Court's precedent, I believe those errors constitute an abuse of discretion. Unlike the Majority, I would not reweigh the interests balanced in a forum non conveniens analysis to determine if the District Court's result can be reached another way. I would remand this case so the District Court could apply the proper standard in the first instance.

The district court failed to give the required strong presumption in favor of plaintiffs' choice of forum. SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1099 (11th Cir. 2004). Before dismissing a case

---

[1] One of these Defendants is a limited liability company, whose citizenship is determined, in turn, by the citizenship of its members. Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam). The District Court referred to only the company's principal place of business. Nygard v. DiPaolo, No. 0:17-CV-60027-UU, 2017 WL 4303825, at *1 (S.D. Fla. May 23, 2017).

25

on grounds of forum non conveniens, courts in this Circuit are required to balance, among other things, certain private and public interests involved in the litigation. Wilson v. Island Seas Invs., Ltd., 590 F.3d 1264, 1269 (11th Cir. 2009).  This balancing requires the court to identify those interests weighing in favor of litigating the case in a domestic forum; identify those competing interests that weigh in favor of litigating the case in a foreign forum; then balance the two.  Id.

In this Circuit, the relevant domestic forum for this balancing analysis is "the United States as a whole."  Aldana v. Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1293 (2009).  But in this case, instead of using the United States as a whole, the District Court used the State of Florida as the relevant domestic forum. It was this mistake that led the District Court to wrongly decide that Plaintiff Nygård, Inc., which is a citizen of Delaware and New York, was a foreign plaintiff. And this mistake in turn caused the court to give Nygård, Inc.'s choice of forum less deference.  Thus, the District Court violated the rule requiring "the strong presumption that a United States citizen will not be ousted from the courts of this country."  SME Racks, 382 F.3d at 1099.  This court has expressly held that the failure to give this presumption to a U.S. plaintiff's choice of forum is an abuse of discretion.  Id.  I would reverse based on this error alone.

The Majority says reversal is not warranted because the District Court gave "some deference" to the plaintiffs' choice of forum, insofar as that court said more

26

deference would not have changed its decision. Maj. Op. at 12. However, plaintiffs' choice of forum was entitled to more than "some" deference. Courts owe "some" deference to the choice of forum of any plaintiff in a forum non conveniens analysis, regardless of its citizenship. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 n.23, 102 S. Ct. 252, 266 n.23 (1981). With a U.S. plaintiff, however, courts owe more deference. Id.; Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001) (noting a stronger presumption applies in cases brought by domestic plaintiffs and a weaker presumption applies in cases brought by foreign plaintiffs). In light of the requirement that courts give more than some deference to a U.S. plaintiff's choice of forum, some deference is not enough.

In giving the proper level of deference and strength of presumption, a court seeking to oust a U.S. citizen from the federal courts faces a high bar. See SME Racks, 382 F.3d at 1099. I recognize that this District Court did mention the standard it should have applied, but only at the end of a lengthy footnote, saying: "[E]ven if Plaintiffs were entitled to substantial deference, the Court would still dismiss this case on forum non conveniens grounds for reasons set forth herein." Nygard, 2017 WL 4303825, at *7 n.6. And the "reasons set forth herein" did not meet the standard required in our Circuit. District Courts must "require positive evidence of unusually extreme circumstances" and "be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to

27

deny a United States citizen access to the courts of this country." See Wilson, 590 F.3d at 1270 (quotation marks omitted).  When the presumption in favor of the plaintiffs' choice of forums applies, dismissal is proper only where a court finds that "trial in the chosen forum would be unnecessarily burdensome for the defendant or the court."  Id. (emphasis added) (quoting Piper Aircraft, 454 U.S. at 255 n.23, 102 S. Ct. at 266 n.23).  Nowhere did this District Court demonstrate why this case involves such exceptional concerns.

As I read it, the Majority's own analysis shows why remand is necessary. The Majority opinion revisits nearly every decision the District Court made.  It notes errors in the District Court's assessments along the way, then bases its decision on a public interest factor never considered by the District Court.  Maj. Op. at 9–24. "[T]he proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are [] sound and supported by the record." Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 10, 100 S. Ct. 1460, 1466 (1980).  I think the better course would be for the District Court do the proper analysis in the first instance.  And if the District Court had done the proper analysis, I expect this case would have stayed in the U.S. District Court of plaintiffs' choosing.

I respectfully dissent.

28